FIRST AUBURN TRUST COMPANY

APPELLANT FROM DECREE OF JUDGE OF PROBATE.

RE: ESTATE OF ABRAHAM B. BAKER.

Androscoggin.     Opinion, November 13, 1937.

*Webber & Webber*, for appellant.
*Berman & Berman,*
*Harris M. Isaacson,* for appellees.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.    This case comes up on exceptions to a ruling by the Justice presiding in the Supreme Court of Probate dismissing an appeal from a decree of the Judge of Probate. The probate decree appealed from was one sustaining a former decree of insolvency of the estate of Abraham B. Baker and which was attacked as procured by fraud.

The decedent died testate, leaving a widow and three minor children. His executors qualified December 22, 1932. The widow was sole beneficiary. An inventory was returned showing an appraisal of $62,575, divided into real estate of over $28,000, personal estate approximately $34,000. Most of the personal estate consisted of assets of the partnership of Abraham B. Baker and his brother, Joseph Baker, and similarly, most of the real estate was owned in common by the decedent and his brother.

While the inventory may be technically correct in form, it did not disclose the true situation. Full value of the real estate was set out in the schedule, but it was subject to mortgages aggregating $43,500. Using the figures of the appraisal, the apparent equity in all the real estate of the deceased was slightly over $12,000 instead of $28,000, as reported. Again, as to the personal property represented by partnership assets, no allowance was made for liabilities of the partnership. The one-half interest of the estate in such assets is listed at approximately $34,000, but testimony showed substantial liabilities against the partnership.

Joseph Baker qualified as surviving partner and administered the partnership estate.

Within one month from the qualification of the executors, Joseph

Baker purchased the partnership assets and also received a deed from the widow, as devisee, of all real estate owned in common. The net result of this transaction was that $20,000 was paid over to the executors and to the widow, $5000, less an adjustment of about $500, arising out of a previous real estate transaction between the decedent and the purchaser. Whether these sums were considered as representing the proportionate values of the real and personal property is not definitely disclosed.

The result was that the executors ostensibly had $20,000 in their hands, and other assets appraised at $2200. Subsequently, claims were filed against the estate aggregating $37,000, the principal one being that of the present appellant of $31,000. These claims represented largely the liability of the decedent upon mortgage notes on real estate which had been sold and the mortgages assumed by the purchaser. Because of depreciation in value of the mortgaged property, accumulation of interest and other charges, the creditors sought to charge the original makers of the mortgage notes.

There were also funeral expenses and expenses of administration estimated at $3600.

The appellant brought suit upon a portion of its claims and recovered judgments aggregating $15,280. Suit was pending upon the claim of another creditor in the sum of $5000; one claim of about $900 was dropped. This was the situation when the limitation of the statute as to commencement of suits became operative.

Negotiations pending for the compromise of the claims of the appellant proved unavailing and there was refusal to allow any credit for the mortgage security. Neither did the appellant cancel or waive by affirmative act any part of its entire claim as filed. On November 1, 1934, the executors filed in the Probate Court representation of insolvency of the estate. After notice and hearing on December 20, 1934, the estate was decreed insolvent. Subsequently, the widow waived the provisions of the will and presented a petition for allowance upon which award was made. These proceedings were taken in accordance with statutory regulations. Without legal fault on the part of the executors or widow, the appellant, having no actual notice, did not appear and did not seasonably file an appeal. Its petition to do so from the decree of allowance to the

widow was denied in *Trust Company* v. *Baker,* 134 Me., 231, 184 A., 767.

The present proceeding arose in the form of a petition to the Probate Court, seeking an annulment of the decree rendering the estate insolvent. It is based upon the contention that the executors and the widow, who were acting under the advice of counsel, by false representations, by withholding important information as to assets and liabilities and by a course of fraudulent conduct secured decrees which diverted the funds of the estate to the widow at the expense of creditors. Hearing was had upon this petition at which all parties were represented. After review of the facts, the Judge of Probate dismissed the petition. Appeal was then taken to the Supreme Court of Probate. The sitting Justice in his findings and decision says:

> "Upon a hearing before said Judge of Probate, the Judge by his decree found that no fraud had been practiced upon his court; that his findings in rendering the estate insolvent and granting the widow's allowance were not rendered by any fraud or accident or mistake, and that his decree should stand."

The findings of the Judge of Probate were confirmed and the appeal dismissed.

By exceptions to the latter ruling, this Court is asked to determine, notwithstanding the consideration and review given by the courts below, that the Probate Court was in fact actually misled by misrepresentation and fraud.

It is asserted on behalf of the appellant that at the time of the representation of insolvency the amount of the indebtedness was practically fixed, that further claims were barred by the statute of limitations and there actually existed a clear surplus of assets over liabilities. This is predicated upon the contention that debts aggregated a little less than $24,000, that assets amounted to $27,200 without taking into account the salvage value on mortgaged property to which the estate would be subrogated upon payment of the claims of two of the creditors.

On the other hand, it is clearly shown that the personal assets were insufficient to pay the debts. The real estate must be taken also, and upon license to sell granted by the Probate Court, the

widow would be entitled to one-third of the equity. Again, Joseph Baker, in taking over the partnership estate assumed the partnership obligations. He had since died and his estate was in process of settlement. The partnership liabilities had not been liquidated. While the statutory period of limitations for prosecution of claims had expired, creditors both of the partnership and of the estate might be able to avail themselves of the provisions of R. S., Chap. 101, Sec. 20, affording relief from the statute bar under certain circumstances.

With these unliquidated liabilities to an amount substantially in excess of the assets of the estate, the executors were not required to determine at their peril whether the statutory bar would be certainly effective.

As pointed out by the court in *Walker* v. *Newton*, 85 Me., 458, 27 A., 347, 348:

> "Hence it is provided that when it appears to the administrator, that the estate may be eventually insolvent, he may so represent to the court and have commissioners appointed to adjudicate upon claims. . . . The estate must thereafter be settled as an insolvent estate, even though it be in fact abundantly solvent."

The probate decree is attacked for fraud on the part of the executors.

> "It is well settled that a probate court has the power and duty upon subsequent petition, notice and hearing to vacate or annul a prior decree, even a decree of probate of a will, clearly shown to be without foundation in law or fact, and in derogation of legal right." *Merrill Trust Company, Appellant*, 104 Me., 566, 72 A., 745, 748.

The principles involved are stated thus in 15 R. C. L., Judgments, Par. 214,

> "For any description of *mala fides* practiced in obtaining a judgment equity will grant relief. If by fraud and misconduct, one has gained an unfair advantage in proceedings at law, whereby the court has been made an instrument of injustice

equity will interfere to prevent him from reaping the benefit of the advantage thus unfairly gained. . . . A judgment will not, however, be relieved against merely upon surmise or suspicion of fraud, or for mere technical fraud, but only for actual and positive fraud in fact, established by evidence which naturally and reasonably tends to establish it."

Our Court has said with regard to proof of fraud,

"The charge is a serious one and the law imposes upon the defendant the burden of substantiating it by clear and convincing proof." *Strout* v. *Lewis*, 104 Me., 65, 71 A., 137, 138.

In the present proceeding the court below was called upon to determine essentially a question of fact, and findings of that character are conclusive and not to be reviewed by the Law Court if the record shows any evidence to support them. *Trust Company* v. *Baker*, supra, and cases cited.

The record, upon careful review, fails to show error in the ruling of the presiding Justice.

*Exceptions overruled.*