Roy C. Knapp, Aplt. from Decree of Judge of Probate Lewiston and Auburn Society for the Prevention of Cruelty to Animals, Aplt. from Decree of Judge of Probate
In re: Estate of Fred E. Knapp

Androscoggin.　Opinion, August 11, 1953

*Seth May,*
*Frank Powers,*
*John G. Marshall,* for Roy C. Knapp.

*Berman and Berman,* for Lewiston and Auburn S.P.C.A.
*Carl F. Getchell,*
 for Maine State Society for Protection of Animals
*Charles F. Adams,*
*Israel Alpren,* for Estate, Fred E. Knapp.
*Ralph C. Masterman,* for S.P.C.A., Hancock County.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J.

FELLOWS, J.   These cases come to the Law Court on exceptions to the decision of a Justice of the Superior Court, sitting as the Supreme Court of Probate for Androscoggin County.

It appears that Fred E. Knapp died testate in 1944, leaving in the first clause of his will all his property to his wife, Lida A. Knapp, for her life, with power of disposal for her comfortable support and maintenance.   Then follows the portions of his will that are the subject of this litigation:

> "Second, Subject to the first clause of my will, I give, bequeath and devise ten per cent (10%) of the residue remaining at my wife's decease, to the Stanton Bird Club, a corporation existing in Lewiston, Androscoggin County, Maine.
>
> Third, Subject to the foregoing provisions of this will whatever may be remaining of the residue of my estate after Clauses 1 and 2 of this will are satisfied, I give, bequeath and devise the same, in equal shares, to the Salvation Army, Inc. and to the Society for the Prevention of Cruelty to Animals.   The gifts to each of them are upon the express condition that each of the said beneficiaries shall use all of said fund which they may receive under this will wholly in Androscoggin County, Maine, each respectively for the support of their general work in said County."

The will was admitted to Probate and administered upon, and on the filing of the final account by Oral E. Holmes, Admr. d. b. n. c. t. a., there remained an undistributed balance of $49,002.42.   The Admr. d. b. n. c. t. a. then filed in the Probate Court his petition for authority to distribute this residue, under the third clause in the will.   On November 28, 1947, the Judge of Probate made a decree ordering

this balance (less a sum of $3.00 for future expenses) paid as follows: $24,499.71 to "Society for the Prevention of Cruelty to Animals" and $24,499.71 to "Salvation Army, Inc." The Admr. d. b. n. c. t. a. later filed a distribution account that showed that he had paid to "The Salvation Army, $24,499.71" and "Society for the Prevention of Cruelty to Animals, $24,499.71" as ordered. This distribution account was allowed in 1948, although the voucher for the payment to the "Society for the Prevention of Cruelty to Animals" read "Society for the Prevention of Cruelty to Animals, by William M. Ingraham, Pres. Me. State Society for the Protection of Animals."

The will gave nothing to the testator's brother Roy C. Knapp, who is the appellant and exceptant in these proceedings. The will gave nothing to any blood relative. No question is raised as to the bequests and payments to the Stanton Bird Club or to the Salvation Army, but the payment of $24,499.71 by the administrator to the Maine State Society for the Protection of Animals, where the will left one-half of the residue to the Society for the Prevention of Cruelty to Animals, is strenuously objected to as a fraud upon the court, and is the subject of this controversy.

The widow was named executrix of the will but she died about four months after the testator, and was succeeded by her sister's husband Oral E. Holmes, as administrator of goods not administered upon with the will annexed.

The administrator was uncertain as to the identity of the "Society for the Prevention of Cruelty to Animals." The only society having nearly such a name was "The Society for the Prevention of Cruelty to Animals of Hancock County, Maine" at Bar Harbor, and a check for one-half the residue was offered to it, but was declined, probably because its charter authorized work in Hancock County, and the will in

this pending case provides that testator's money is to be used in Androscoggin County.

Counsel for the administrator then corresponded with the Maine State Society for the Protection of Animals at Portland, and concluded that this Society for the Protection of Animals was the society *intended* by the testator. The money was then paid to the Maine State Society for the Protection of Animals. Payment was made to its president William M. Ingraham who signed the voucher in the name of "Society for Prevention of Cruelty to Animals," as president of the "Maine State Society for the Protection of Animals."

The distribution account was filed in January, 1948, and allowed, and showed payment according to the terms of the order of distribution and according to the terms of the will.

In 1949, more than a year after the distribution account was allowed, the testator's brother Roy C. Knapp filed in the Probate Court his petition to revoke the original decree allowing the will, on the ground that the will had not been proved. This petition was denied by the Probate Court and denied on appeal. Exceptions were overruled by the Law Court in *Knapp, Appellant,* 145 Me. 189.

Later, in January 1951, Roy C. Knapp filed this petition, which commenced the pending litigation, alleging that the bequest to the "Society for the Prevention of Cruelty to Animals" in paragraph third of the will contains a description of the Society at Bar Harbor; that it is the only society within the terms of the will; that this society having declined the gift, the money descends as intestate property and should be ordered paid to the petitioner as next of kin; that payment to the Maine State Society for the Protection of Animals was erroneous, and that the statement in the distribution account to the effect that the money was paid to

the Society for the Prevention of Cruelty to Animals when actually paid to the Maine State Society for Protection of Animals was "false and untrue" and "a fraud" on the Probate Court. The petitioner, Roy C. Knapp, therefore, asked the Probate Court to reopen "said order of distribution and said distribution account," and to order and require the administrator to pay the petitioner $24,499.71 and to issue a new order of distribution in favor of himself in the sum of $24,499.71.

The Lewiston and Auburn Society for the Prevention of Cruelty to Animals was a local body which about 1903 passed out of useful existence by the death of all its members. It had disintegrated but was apparently continued, or reorganized, as an organization known as "Androscoggin County Humane Society." The Lewiston and Auburn Society for the Prevention of Cruelty to Animals, however, was lately revived and petitioned for leave to intervene, and claimed to be the legatee intended by the testator.

After hearing on this petition to reopen, in the Probate Court, the Judge of Probate presumptively found no fraud had been practiced; that the payment to the Maine State Society for the Protection of Animals was a correct payment, and that this Society was the intended legatee. The decree of the Probate Court denied the Knapp petition. On appeal, with the Superior Court Justice sitting as the Supreme Court of Probate, the decree of the Probate Court was affirmed. The pending exceptions were taken by Roy C. Knapp and the Lewiston and Auburn Society for the Protection of Animals.

The presiding Justice in the Supreme Court of Probate found that the words in the will, "Society for the Preven-
found no fraud or imposition on the Probate Court, and
tion of Cruelty to Animals," did not convey a plain meaning; that extrinsic evidence was admissible without pre-

liminary resort to equity; that the will and the evidence eliminated the Bar Harbor Society; and that the evidence failed to place the Lewiston and Auburn and other Androscoggin County bodies "in the ken or in the consciousness of the testator;" that the testator contemplated not a local body but one with a broader area and base which should use the legacy wholly in Androscoggin County; that there was sufficient evidence to support the contention that testator knew of the existence of the Maine State Society and of its purposes and activities and that he sympathized with its objects; that the latter has a statewide range including Androscoggin County, and that it operated in 1935 and in 1944 and is still active, and is the only society conforming to the elements of description in paragraph third of the will, and is therefore entitled to the legacy. The presiding justice ruled that extrinsic evidence was admissible under the circumstances to identify a devisee or legatee, and "beneficient bequests are not to be defeated by misnomers." The justice also ruled that the testimony of witnesses is admissible concerning declarations of the testator because of doubt or latent ambiguity.

The bills of exceptions of Roy C. Knapp and Lewiston and Auburn Society for the Prevention of Cruelty to Animals are more or less similar, and with petitions, decrees, and evidence made a part, (differing according to their particular contentions) contain exceptions to the effect that (1) there was a fraud perpetrated upon the court because of voucher showing payment to Society for Prevention of Cruelty to Animals, and there is no sufficient legal evidence to sustain the finding and ruling that the Maine State Society for the Protection of Animals was the society intended by Fred E. Knapp testator; (2) that the court erred in admitting in evidence the deposition of one Ernest H. Dyer; (3) that the court erred in treating these proceedings as if

the proceedings were a case in equity for construction of the will; (4) that if the Hancock County Society was not the intended beneficiary, there was no society answering to the name and description given in the will; (5) that the evidence shows that the Lewiston and Auburn Society for the Prevention of Cruelty to Animals was the intended beneficiary; (6) that there was no evidence establishing with reasonable certainty that the Maine State Society for the Protection of Animals was intended; (7) that the court erred in admitting extrinsic evidence to show that the Maine State Society for the Protection of Animals, or other claimants, was the intended beneficiary; (8) that the Probate Court has no power to determine that an organization is entitled to a charitable gift, and that only a Court of Equity in the case of a charitable trust has the power under the *cy pres* doctrine; (9) that the court erred in not finding that the bequest lapsed.

The problem presented to the Probate Court and to the Supreme Court of Probate (now before us on exceptions) is the intent of the testator as expressed in his will. It "takes precedence over all else." *Trust Co.* v. *Perkins et al.*, 142 Me. 363. It is clear beyond all reasonable doubt that this testator intended to recognize none of his blood relatives, and that he did not intend that there be any partial intestacy. He named in his will the "Society for the Prevention of Cruelty to Animals" to receive, outright, one-half of the residuum, with instructions that the money be spent in its work in Androscoggin County, Maine. The testator did not precisely and correctly name, and he did not intend, the "Society for the Prevention of Cruelty to Animals of Hancock County," at Bar Harbor, Maine, and both exceptions seem to recognize this, although petitioner Knapp's brief says "we do not pretend that the Hancock Society was actually intended * * * the Hancock Society does answer to the designation in the will."

The prior proceeding in 1949 attacking the allowance of this will, brought by Roy C. Knapp, this petitioner, and decided against him, is not *res judicata* as to matter at bar. The issue here was not determined in the prior case. See *Knapp, Appellant*, 145 Me. 189; *Light & Power Co.* v. *Van Buren*, 118 Me. 458, 463, 109 A. 3; *Bray* v. *Spencer*, 146 Me. 416, 82 Atl. (2nd) 794.

Erroneous decrees of the Probate Court upon matters within its jurisdiction, when not appealed from, may be conclusive. Such decrees are in the nature of judgments and cannot be impeached collaterally. The right of appeal is given for the purpose of correcting errors, such as, errors of judgment, or mixed errors of fact and law. *Mudgett's Appeal*, 103 Me. 367, where order of distribution erroneously was per stirpes instead of per capita, it was nevertheless conclusive.

The Probate Court has the power, upon subsequent petition, to vacate or to annul a prior decree, clearly shown to be without legal foundation and in derogation of legal right, such as for fraud, perjury, forgery, discovery of later will, etc. *Merrill Trust Co., Appellant*, 104 Me. 566; *Cousins* v. *Advent Church*, 93 Me. 292; *Waters* v. *Stickney*, 12 Allen (Mass.) 1, cited with approval in Merrill Trust Co., Appellant; *Auburn Trust Co., Appellant*, 135 Me. 277. See *Roy Knapp, Appellant*, 145 Me. 189, 192.

Where there is in the Probate Court an existing decree, no new decree can be made. Thus, where it did not appear that the petitioner filed a petition in the Probate Court to have the decree set aside, but it was a petition to have a codicil declared null and void, our court held that such a decree could not be made in the face of an existing decree. The only way the earlier decree could be disposed of was by reopening, or else by annulment, before a new decree could be

made. The ruling of the presiding justice in dismissing appeal was correct. *McKellar, Appellant,* 118 Me. 64, 66.

The statute relating to distribution of residual property provides that "when on the settlement of any account of an administrator, executor, guardian, or trustee there appears to remain in his hands property not necessary for the payment of debts and expenses of administration, or for the payment of pecuniary legacies of fixed amount, nor specifically bequeathed, the judge, upon petition of any party interested, after public notice and such other notice as he may order, shall determine who are entitled to the estate and their respective shares therein under the will or according to law, and order the same to be distributed accordingly; and alienage shall be no bar to any person, who, in other respects, is entitled to receive any part of such property." R. S., 1944, Chap. 143, Sec. 21. See also R. S., 1944, Chap. 140, Sec. 9.

The statute says that the Probate Court "shall determine who are entitled to the estate and their respective shares therein under the will." See *Stilphen, Appellant,* 100 Me. 146, 149. The Probate Court determines who the individuals are to whom the testator gave the remainder of his property and the amounts to which they are entitled. It is not a question of *cy pres* under this statute. It is a question of the *identity* of the person *named* or *intended.* There may be a misnomer of some person to whom he intended to give. *Cy pres* is not applicable when this statute is invoked. See *Universalist Society of Bath* v. *Swett,* 148 Me. 142, 90 Atl. (2nd) 812; *Guilford Trust et al.* v. *Inh. of Guilford et al.,* 148 Me. 162, 91 Atl. (2nd) 17; *Lynch, Trustee* v. *Congregational Parish,* 109 Me. 32. The Judge of Probate, however, has authority to act in equity proceedings, where the *cy pres* doctrine might be adopted, but the jurisdiction to act in equity is contained in another statute. There are, by virtue of these two statutes, two different courts, one a Probate

Court, and the other an Equity Court of special and limited authority. The two courts have but a single judge. See R. S., 1944, Chap. 140, Sec. 2; R. S., 1944, Chap. 143, Sec. 21. *Havana Electric Company In re Estate of Neely,* 136 Me. 79.

The Probate Court under the statute apparently has power to determine on a petition for distribution or on allowance of an account, who is entitled to the balance remaining in the hands of an administrator, or executor, subject always to right of appeal. *Mattocks* v. *Moulton,* 84 Me. 545; *Stilphen, Appellant,* 100 Me. 146, 149; *Small* v. *Thompson,* 92 Me. 539, holding that on allowance, court has power to interpret will so far as necessary for that purpose. See also *Strout* v. *Chesley,* 125 Me. 171, 178, holding that Judge of Probate may determine who is entitled to take and respective shares, but does not take away right of equity to construe a will.

The intention of the testator must be gathered from the language that he used in the will. It may be sought within the "four corners of the will." If the language in a will is doubtful, or ambiguous, conditions existing when the will was made may be considered, if they were known to the testator and "may be supposed to have been in the mind of the testator." *Palmer* v. *Estate of Palmer,* 106 Me. 25, 28.

. "It is a familiar rule of interpretation that when the name or designation in the will does not designate with precision any person or corporation, but so many of the circumstances concur to indicate that a particular person or corporation was intended, and no similar conclusive circumstances appear to distinguish any other beneficiary, the person or corporation thus shown to be intended will take. *Preachers' Aid Society* v. *Rich,* 45 Me. 552; *Howard* v. *American Peace Society,* 49 Me. 288; *Tucker* v. *Seaman's Aid Society et al.,* 7 Met. (Mass.) 188. Extrinsic evidence

is always admissible to identify a devisee or legatee, and beneficient bequests are not to be defeated by mere mis-nomers. This rule applies to a devise or a bequest to a corporation." The above is quoted from *Trust Co.* v. *Pierce,* 126 Me. 67, 69, where the will of testator directed trustee to pay income to Maine State Society for the Prevention of Cruelty to Animals and the court ordered payment to Maine State Society for the Protection of Animals.

There is no obligation to file a distribution account. When an executor or administrator has paid as required by decree, he may file an account, which may be a final discharge. The statute creates a privilege but imposes no obligation. See *Mudgett's Appeal,* 105 Me. 387, construing a portion of R. S., 1944, Chap. 143, Sec. 21.

There is no appeal from the decision of the Supreme Court of Probate. The case must go to the Law Court on exceptions. Findings of fact are conclusive if there is credible evidence to support them, and if the findings are not "clearly wrong." "If he finds facts without evidence, or if he exercises discretion without authority, his doings may be challenged by exceptions." *Cotting* v. *Tilson,* 118 Me. 91; *Cote et al., Appellants,* 144 Me. 297. Findings must be "supported by evidence of real worth and probative value." *Mitchell* v. *Mitchell,* 136 Me. 406, 417.

"It has long been the law in Maine that where a decision is made by the court, without the intervention of a jury, a party is not aggrieved by the reception of immaterial or illegal testimony if there is sufficient legal testimony to authorize or require the court to render the decision that was made. *Portland* v. *Rolfe,* 37 Me. 400; *Pettengill* v. *Shoenbar,* 84 Me. 104. Inadmissible evidence received by the court, hearing a case without a jury, furnishes no ground for exception unless it appears that his decision was based in whole or in part on such evidence. *Haskell* v. *Hervey,* 74 Me.

192. 'Factual decisions made by triers of fact will not be disturbed in appellate proceedings, if supported by credible evidence.' Murray, J., in *Brown* v. *McCaffrey, et al.,* 143 Me. 221, 226." Quoted from *Jolovitz* v. *Redington & Co., Inc.,* 148 Me. 23, 30.

A reference in the bill of exceptions to the body of evidence, or the incorporation of evidence as a part of the bill, does not take the place of a succinct and summary statement of the specific grounds of exceptions in the bill itself. A statement in the bill of exceptions, that pleadings and all the evidence are made a part of the bill, is usually necessary, but there must also be a summary of the specific grounds. *Dennis* v. *Packing Co.,* 113 Me. 159, 161. A bill of exceptions, to keep within the rules, cannot be constructed like a coastal dragnet to be pulled over and through the record in the vain hope that the court may find some error caught therein. It is not the work of the court to seek for errors. It is the duty of counsel to point out the claimed fault and to state wherein there is prejudicial error. See *Bradford* v. *Davis,* 143 Me. 124, and cases therein cited.

An examination of the extensive record in this case, in the light of the foregoing well established rules of law, gives to the Law Court this picture: There was a decree of distribution which had been made in October 1947 by the Judge of Probate. The distribution decree followed the words in the testator's will. It ordered payment of the balance remaining to the "Society for the Prevention of Cruelty to Animals" and to the "Salvation Army, Inc.," as the will required. The administrator d. b. n. c. t. a. in January 1948 filed a distribution account that showed that he had paid the parties as ordered in the distribution decree. One payment voucher, however, read "Society for the Prevention of Cruelty to Animals by William M. Ingraham Pres. Me. State Society for the Protection of Animals." There was no fraud or mistake in the order for distribution. The order for distribu-

tion followed the provisions in the will. The Probate Court found no error in the distribution account, and presumptively considered and passed upon the voucher. The Probate Court allowed the account in January 1948, as an account showing payment to the parties intended by the testator. No appeal to the Supreme Court of Probate was taken from these two decrees in 1948. The action by the Probate Court in the absence of fraud was final. *Mudgett's Appeal,* 103 Me. 367.

In January 1951 the petitioner Knapp commenced the proceedings at bar, alleging that there was fraud and improper action in the Probate Court, and asked for reopening of the distribution decree and the decree allowing the distribution account, because of the fact that the oath to the distribution account was false and untrue which was a "fraud and imposition on the Court." The Judge of Probate denied this petition to reopen. See rule in *Merrill Trust, Appellant,* 104 Me. 566 and *Trust Co., Appellant,* 135 Me. 277.

After the hearing in the Probate Court in 1951, and the denial by the Probate Court of Knapp's pending petition to reopen, Knapp and the Lewiston and Auburn Society took appeals to the Supreme Court of Probate. On appeal, the justice presiding affirmed the decree of the Probate Court which denied the pending Knapp petition to reopen.

The only question now before the Law Court, under the bills of exceptions presented by the petitioner Roy C. Knapp and the intervening Lewiston and Auburn Society for the Prevention of Cruelty to Animals, is whether the Supreme Court of Probate was legally authorized upon the record to affirm the decree of the Probate Court denying the pending petition. It is not a question of how any other judge might have decided in the first instance. There is no question of fact open to the Law Court. Was there credible evidence before the Supreme Court of Probate on which the justice presiding could render his decision? We think there was.

At the beginning of these proceedings, in the first instance, the Probate Court heard evidence on the petition to reopen the two prior decrees. The Probate Court found there was no fraud previously practiced upon the court in the allowance of the distribution account, and that the payment to the Maine State Society for the Protection of Animals was a payment to the corporation intended by the testator. The Probate Court, therefore, denied the pending petition to reopen.

The Supreme Court of Probate on appeal found no fraud, and could have, and perhaps should have dismissed the appeal and affirmed the decision below under the rule in *Mudgett's Appeal,* 103 Me. 367, because the Probate Court had jurisdiction to determine, and did determine, the identity of the person intended by the testator, which was not appealed from in 1948.

The Supreme Court of Probate, however, went into the question of identity. There was sufficient credible evidence on which the justice presiding could find, as he did find, that the payment to the Maine State Society for the Protection of Animals was proper, and in accordance with the intention of the testator as expressed in his will.

The exceptions taken to the refusal of the court to annul, or reopen, the decrees of distribution and allowance of distribution account, were based on the contentions that there was a fraud practiced on the court; that there was insufficient admissible evidence, and that no extrinsic evidence was admissible to ascertain the intention of the testator. Under the view that we take of the record and the findings, all the exceptions must be overruled. There was no "clear and convincing proof of fraud." *Auburn Trust Co., Appellant,* 135 Me. 277, 281, 282. Proof of fraud was necessary to permit reopening. Extrinsic evidence was admissible to establish identity under the circumstances. There was suf-

ficient evidence that was admissible and credible, on which the presiding justice could base a decision that the terms of the will had been carried out.

Under our system the validity of decrees of the Probate Court are an economic necessity. Rights in and titles to property often depend upon them. Each generation sees the Probate Court pass in some manner on the succession rights to nearly all property. If there are errors made by the Judge of Probate in a decree, the right of appeal is given to enable parties to correct them. When, however, no appeal is taken, and the parties have acted in reliance upon decrees, such decrees must not be reopened, or set aside, without clear and convincing proof of fraud, or other compelling legal cause. In this case the Supreme Court of Probate has decided that the previous Probate decrees of distribution and the allowance of account should not be disturbed. The record warrants the decision.

*Exceptions overruled, in both cases.*