**ESTATE OF Richard C. PAINE, Jr.**

Supreme Judicial Court of Maine.

Argued April 29, 1992.
Decided June 10, 1992.

Wayne R. Crandall (orally), Crandall, Hanscom, Pease & Collins, Rockland, for appellant.

Peter L. Murray (orally), Ann Courtney, Murray, Plumb & Murray, Portland, Arthur Strout (orally), Strout, Payson, Pellicani, Hokkanen & Levine, Rockland, for appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN and CLIFFORD, JJ.

GLASSMAN, Justice.

Tina Paine, the daughter of Richard C. Paine, Jr., appeals from the judgment of the Knox County Probate Court (*Emery, J.*) appointing Sylvia Constable conservator and guardian of Richard, challenging a number of interim rulings of the court relating to the period of time that John Sanford was the conservator of the property of Richard. We find no error in the record and affirm the judgment of the Probate Court.

In December 1981, in response to Richard's petition stating that because of his involvement in extensive litigation with his former wife concerning the title and interest in real estate and personal property located in Maine he was no longer able properly to manage the property to prevent waste and dissipation, the Knox County Probate Court (*Faber, J.*) appointed John J. Sanford conservator of such property. At the time, the property, including a major collection of antique automobiles, was valued at approximately six million dollars. This conservatorship was expanded in June 1985 to include out-of-state assets of Richard and continued beyond the final disposition of the litigation with Richard's former wife.

After an unsuccessful attempt to secure access to the financial records of the conservatorship, in October 1989 Tina, as an interested person, *see* 18–A M.R.S.A. §§ 1–201(20) and 5–416(a) (1981), filed a petition in the probate court seeking, *inter alia,* an accounting and exhibition of records of Sanford's conservatorship of Richard. On April 18, 1990, pursuant to 18–A M.R.S.A. § 5–425(d) (1981),[1] Sanford distributed the conservatorship assets to Richard. Thereafter, Richard conveyed the assets to an *inter vivos* trust with Sanford as trustee. After a full hearing on Tina's petition at which Richard appeared and testified, by its May 31, 1990 order the Probate Court (*Faber, J.*) found that at "the time of the hearing and at all relevant times prior hereto" Richard "is and has been ... fully ... competent and able to oversee and direct the activities of [Sanford] ... and to insure that [Sanford] is faithfully acting in his best interest and is carrying out his wishes." The court also found that on the record before it "there is no basis for any finding of any irregularity or impropriety whatsoever in the conduct of [Sanford]." The court further found that "[Richard] has stated unequivocally that he wishes that no information concerning his buying, selling, and trading in antique automobiles be revealed to any person including [Tina] and other members of his family" because of the adverse economic impact such disclosure would have on his ability to continue to manage and enhance the collection.[2] Based on these findings, the court granted Tina limited access to the conservatorship records with leave for good cause shown to have access to additional records.

After a hearing, on September 10, 1990 the court (*Emery, J.*)[3] denied Tina's motion for a new trial based on her claim of newly discovered evidence relating to Richard's

---

1. 18–A M.R.S.A. § 5–425(d) provides in relevant part:

 When the conservator is satisfied that a protected person's disability, other than minority, has ceased, the conservator, after meeting all prior claims and expenses of administration, shall pay over and distribute all funds and properties to the former protected person as soon as possible.

2. There was evidence before the court that at that time Richard's assets exceeded fourteen million dollars because of his skill in managmenet of his automobile collection.

3. In the interim period between May and August 1990, Judge Faber had resigned. M.R.Prob.P. 63 provides that in such event any other judge may exercise the discretion to grant a new trial.

competency. Thereafter, on September 19, 1990, Sanford filed a notice of the April 1990 distribution of conservatorship assets to Richard. On November 21, 1990, Tina filed a joint petition for the appointment of herself as guardian and the Bar Harbor Banking and Trust Co. as conservator for Richard. By agreement of the parties, the proceeding was bifurcated. After a hearing, the court on August 28, 1991 denied Tina's petition for guardianship of Richard and appointed Richard's twin sister, Sylvia Constable, guardian of Richard. Prior to the hearing on the conservatorship, Tina filed a second motion for a new trial pursuant to M.R.Prob.P. 60(b) as to those issues determined by the May 31, 1990 and the September 10, 1990 orders and an application for additional access to the records of Sanford's conservatorship. Both motions were addressed at the conservatorship hearing, after which the court by its order of October 8, 1991 found, *inter alia*, (1) Tina had shown no good cause for further access to the conservatorship records beyond that permitted by the May 31, 1990 order; (2) the distribution of conservatorship assets to Richard by Sanford was in accordance with the terms of 18–A M.R.S.A. § 5–425(d) and the transfer did not constitute "fraud, misrepresentation or other misconduct of an adverse party" within the purview of M.R.Prob.P. 60(b)(3); (3) Sanford's position as trustee of Richard's *inter vivos* trust did not involve self dealing in violation of 18–A M.R.S.A. § 5–422 (1981), as contended by Tina, nor was there any irregularity in the trust agreement which the court, by agreement of the parties, had inspected *in camera;* (4) there are presently no assets in the conservatorship, but, as stipulated by the parties, a conservatorship was necessary in the event assets were thereafter acquired; and (5) Sylvia Constable is a suitable conservator. Accordingly, the court denied Tina's petition and motions and issued its order removing Sanford and appointing Constable as conservator for Richard, and Tina appeals.

By her appeal, Tina does not challenge the appointment of Constable as guardian and conservator. Rather, she contends that because Richard was not competent at the time, the court erred in determining that Sanford's distribution of assets to Richard was in compliance with section 5–425(d). She also contends that absent a court order terminating Sanford's conservatorship, title to the conservatorship assets could not be reacquired by Richard, and accordingly, the court erred in determining that the conservatorship has no assets. Further, she contends that the court erred in denying her motion for a new trial on the ground that the failure of Sanford prior to September 1990 to inform Tina or the court of the conveyance of assets to Richard constituted "fraud, misrepresentation or misconduct of an adverse party" within the purview of Rule 60(b)(3).

 On a direct appeal from the Probate Court, we review that court's findings for clear error. *In re James John L.,* 601 A.2d 630, 631 (Me.1992). We find no merit in Tina's renewed contention that Richard was not competent at the time of Sanford's distribution of conservatorship assets to Richard. The issue of Richard's competence was squarely before the court at the hearing on Tina's petition to gain access to the conservatorship records, and its finding is reflected in its order of May 31, 1990. On September 10, 1990, the court in its order denying Tina's motion for a new trial on the issue of Richard's competence determined that the finding of the court in its order of May 31, 1990 followed an extensive hearing on that issue and was "fully supported in the record."

 We find nothing in the language of the statutes governing a conservatorship that establishes formal termination proceedings as the exclusive means of passing title from a conservator to a protected person whose disability has ceased. The general comment accompanying the Probate Code makes clear that where, as here, there are no restrictions stated in the appointment, the conservator has broad powers of management that may be exercised without court order, including the ability to distribute and end the arrangement without court order if he can meet the terms of the Code. *See* Uniform Probate Code Gen-

eral Comment, 18–A M.R.S.A. Art. V, Part I, 503 (1981). The court found Sanford's distribution of the conservatorship assets to Richard to be in accordance with the terms of section 5–425(d) and properly determined that by reason of such distribution there are no assets remaining in the conservatorship.

 Nor is there merit in Tina's last contention. Fraud requires clear and convincing proof that an advantage has been gained in the obtaining of a judgment by an act of bad faith whereby the court has been made an instrument of injustice. *In re Baker's Estate,* 135 Me. 277, 281–82, 195 A. 202, 204 (1937). Relief from a judgment on the ground of misrepresentation requires that a party has been injured by justifiably relying on the misrepresentation. *Conger v. Conger,* 304 A.2d 426, 430 (Me.1973). Sanford legally distributed the assets to Richard. He was under no legal duty to report that distribution to the court or to Tina. The court found that a disclosure would not have changed the outcome of the proceedings before the court culminating in the May 31, 1990 and September 20, 1990 orders. Even if Sanford's silence in regard to the distribution were considered to be a misrepresentation, there is nothing in this record to show that Tina relied on that silence or was injured by it. The court properly determined that Tina failed to establish her entitlement to relief from the court's orders of May 31 and September 20, 1990.

The entry is:

Judgment affirmed.

All concurring.