2000 ME 10

William BARCLAY

v.

Wendy ECKERT.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 30, 1999.

Decided Jan. 21, 2000.

Peter G. Cary, Mittel, Asen, Hunter & Cary, LLC, Portland, Sandra Hylander Collier, Ellsworth, for plaintiff.

Norman S. Kominsky, Bangor, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] William Barclay appeals from a judgment of the Superior Court (Hancock County, *Marsano, J.*) affirming a judgment of the District Court (Bar Harbor, *Romei, J.*) that it had jurisdiction to hear a petition brought by Wendy Eckert to modify the parties' original Maine divorce decree regarding parental rights and responsibilities. On appeal, Barclay argues that the District Court erred when it determined that Maine continues to be the appropriate jurisdiction for the resolution of parental rights and responsibilities issues between the parties. Finding no error, we affirm.

I.

[¶ 2] William Barclay and Wendy Eckert were married on September 8, 1979, and

had two children together, Wendy Nicole Barclay, in 1986, and Christian Britt Barclay, in 1988. The family lived in Maine until the parents divorced in April 1992. The settlement agreement, incorporated in the divorce judgment issued by the District Court, provided for shared parental rights and responsibilities, with the children's primary physical residence with the mother. She continued to live in Maine with the two children, and the father moved to Boston to complete his education. He then moved to Colorado, where he eventually remarried.

[¶ 3] In February 1994, the father made a motion to modify the Maine court's judgment, seeking a change in the primary physical residence of the children. The court denied the motion and ordered that the children's primary physical residence remain with their mother, who continued to reside in Maine. In June 1996, without modifying the court's existing order regarding parental rights and responsibilities, the mother and father agreed that the children would move to Colorado. The mother and father dispute the details of this arrangement. The mother maintains that the arrangement was a temporary one lasting only two years to allow her to finish getting her degree. The father, on the other hand, contends that the mother asked him to take the children off her hands because she could not manage them and that the arrangement was permanent.

[¶ 4] In any event, the children lived with their father in Colorado for roughly two years and visited with their mother in Maine. At the end of this two-year period, difficulties developed between the parties. According to the father, he was not aware that the mother wanted the children to return to live in Maine until a conversation in the spring of 1998. Without an agreement having been reached, the children returned to Maine with their mother at the end of the summer of 1998, ostensibly for a visit, or so the father thought.

[¶ 5] Immediately after the children's departure for Maine, the father filed a motion to modify the Maine divorce judgment in the District Court in Boulder, Colorado, arguing that Maine no longer had jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA). He also filed a motion seeking an order compelling the return of the children to Colorado. Shortly thereafter, the mother filed a motion to modify the divorce decree in the Maine District Court, seeking sole custody of the children. In response, the father filed a motion to dismiss the proceedings in Maine, arguing that the Maine court should decline jurisdiction over the matter pursuant to Maine's version of the UCCJA.

[¶ 6] In October 1998, the Colorado and Maine courts contacted one another as recommended by the UCCJA, after which the Colorado court issued an order indicating that it would assume jurisdiction only if the Maine court decided to decline jurisdiction. Following a hearing on the matter, the Maine court denied the father's motion to dismiss. The Colorado court dismissed with prejudice the father's motion to modify, indicating that the Maine court properly retained jurisdiction pursuant to both Colorado's and Maine's versions of the UCCJA.

[¶ 7] The father appealed to the Superior Court which denied the appeal, and this appeal followed.[1]

## II.

[¶ 8] When the Superior Court acts as an intermediate appellate court, we

---

1. It has been 15 months since the District Court denied the father's motion to dismiss. The mother moved for a dismissal of the father's appeal to the Superior Court as an inappropriate interlocutory appeal, but does not raise this issue in the appeal to this Court. While we affirm the District Court's exercise of jurisdiction, we note that denials of motions to dismiss based on the jurisdictional provisions of the UCCJA are not ordinarily appropriate matters for interlocutory appeals. *See Duffy v. Reeves,* 619 A.2d 1094, 1098 n. 1 (R.I.1993) (although disposing of interlocu-

review the decision of the District Court directly. *See Melanson v. Matheson,* 1998 ME 117, ¶ 6, 711 A.2d 147, 148. Jurisdictional questions regarding determinations of child custody are controlled both by the UCCJA (recently replaced by the UC-CJEA),[2] 19-A M.R.S.A. §§ 1701–1725 (1998), *repealed and replaced by* P.L.1999, ch. 486, §§ 2–3 (effective Jan. 1, 2000) (codified at 19-A M.R.S.A. §§ 1731–1783 (Supp.1999)), and by the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A (1994 & Supp.1999). *See Alley v. Parker,* 1998 ME 33, ¶ 4, 707 A.2d 77, 78; *see also* 19-A M.R.S.A. § 1783 (Supp.1999) (motions in child custody proceedings made prior to effective date of new law, i.e., UCCJEA, are governed by law in effect at the time motion was made, i.e., UCCJA). In the event of a conflict, the PKPA preempts the UCCJA. *See Guardianship of Gabriel W.,* 666 A.2d 505, 508 (Me.1995). In the absence of a conflict, the statutes should be considered in conjunction with one another. *See Wambold v. Wambold,* 651 A.2d 330, 332 (Me.1994).

[¶ 9] The PKPA contains a restriction on the power of states to modify custody orders from other states, *see* 28 U.S.C.A. § 1738A(f) (1994), but it has an additional provision for continuing jurisdiction of the initial decree state:

> The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section [requiring that the State have jurisdiction under its own laws] continues to be met and such State remains the residence of the child or of any contestant.

28 U.S.C.A. § 1738A(d) (1994 & Supp. 1999).[3] Additionally, the comment accompanying the portion of the UCCJA that restricts a court's ability to modify foreign custody decrees indicates:

> all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case `. . . . The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.

UNIF, CHILD CUSTODY JURIS. ACT § 14, cmt., 9 U.L.A. pt. 1A (1999); *see also Kendall v. Whalen,* 526 A.2d 588, 590 (Me.1987).

■ [¶ 10] Therefore, pursuant to section 1738A(d) of the PKPA and in light of the above comment, once Maine properly assumes jurisdiction of the custody determination, it retains jurisdiction as long as one parent continues to reside here and the children's contact with Maine continues to be more than slight.[4] *See also McDow*

tory appeal regarding jurisdiction pursuant to UCCJA on the merits, court noted that delay occasioned by such appeals did not serve the interests of the child or parents and held that such appeals would not be allowed in the future absent extraordinary circumstances).

2. The UCCJEA, while substantially similar to the UCCJA, is more comprehensive and detailed, and it provides for registration and enforcement of child custody orders.

3. The UCCJEA, replacing the UCCJA, has an additional provision regarding continuing exclusive jurisdiction of the issuing state similar to that of the PKPA and fills the gap left in the

UCCJA heretofore filled by the above-quoted provision from the PKPA. *See* 19-A M.R.S.A. § 1746 (Supp.1999).

4. The father argues that the District Court erred by not determining that Colorado was the children's "home state" as defined by 19-A M.R.S.A. § 1703(5) (1998), *repealed and replaced by* P.L.1999, ch. 486, §§ 2–3 (effective Jan. 1, 2000) (codified at 19-A M.R.S.A. § 1732(7) (Supp.1999)). The court did not in fact make any determination regarding the children's "home state" when determining whether it had jurisdiction. However, it did not need to make this determination for purposes of determining whether it had continu-

*v. McDow,* 908 P.2d 1049, 1052 (Alaska, 1996); *Barndt v. Barndt,* 397 Pa.Super. 321, 580 A.2d 320, 326 (1990); *In re Marriage of Greenlaw,* 123 Wash.2d 593, 869 P.2d 1024, 1033 (1994), *cert. denied sub nom. Greenlaw v. Smith,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994), *reh'g denied* 513 U.S. 1066, 115 S.Ct. 686, 130 L.Ed.2d 617 (1994).

■ [¶ 11] There is no dispute that the mother has continued to live in Maine since the time of the original divorce judgment and, at the time it was entered, Maine properly had jurisdiction to make the custody determination with regard to the children. The Maine court also considered a motion for modification of the judgment in 1994. Additionally, the court found that the children had significant contacts with the State of Maine.[5] This finding is supported by the record as well.

Notwithstanding the time spent in Colorado, the children have spent most of their lives in Maine, and their mother, with whom they visited during their two-year stay in Colorado, has continued to reside in Maine. Furthermore, the existing custody order provides for the children's primary residence to be in Maine. Pursuant to 28 U.S.C.A. § 1738A(d) and 19–A M.R.S.A. § 1704(1), the Maine District Court has continuing exclusive jurisdiction in this matter.

### III.

■ [¶ 12] The inquiry regarding whether Maine is the appropriate jurisdiction, however, does not end there. A court may nevertheless decline jurisdiction pursuant to the doctrine of *forum non conveniens. See* 19–A M.R.S.A. § 1708(1) (1998), *repealed and replaced by* P.L.1999,

---

ing jurisdiction given its determination that the children had "significant contacts" with the state of Maine. The home state determination is only *necessary* when determining which state court should assume *initial* jurisdiction for the purpose of making child custody determinations. *See* 28 U.S.C.A. § 1738A(c)(2)(A) & (B) (1994) (creating preference for home state when two states could exercise jurisdiction in making initial determination); *see also* 19–A M.R.S.A. § 1745 (Supp.1999) (creating similar preference pursuant to UCCJEA). The father appears to argue on appeal that the proper approach to the facts of this case is to make the jurisdictional determination as if no court had exercised jurisdiction prior to the current proceeding. This is not the case, however, as Maine has exercised jurisdiction in this case on at least two prior occasions. *See also In re the Custody of K.R.,* 897 P.2d 896, 900 (Colo. Ct.App.1995) ("Thus, under the UCCJA, even if Colorado has become the child's home state, the Colorado court is forbidden to modify a foreign custody decree for as long as the state in which that decree was rendered remains the home of the contestant and retains substantial evidence and significant connection with the child.").

5. Section 1704 of Title 19–A provides in relevant part:

**1. Grounds for jurisdiction.** A court of this State that is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . . .

**B.** It is in the best interests of the child that a court of this State assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this State and there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships;

. . . .

19–A M.R.S.A. § 1704(1)(B) (1998), *repealed and replaced by* P.L.1999, ch. 486, §§ 2–3 (effective Jan. 1, 2000) (codified at 19–A M.R.S.A. §§ 1745(1)(B), 1746(1) & 1747 (Supp.1999)). Therefore, the Maine court met the jurisdictional requirements of Maine's version of the UCCJA. As discussed in footnote 1, *infra,* the "home state" preference only applies to initial custody determinations, obviating the necessity of making such a determination for the purposes of continuing jurisdiction once the court makes the "significant contacts" determination. *See also In re the Custody of K.R.,* 897 P.2d at 901 ("Decree states often retain 'significant contact' jurisdiction long after the child has left the state.").

ch. 486, §§ 2–3 (effective Jan. 1, 2000) (codified at 19–A M.R.S.A. § 1751(1) (Supp.1999)).[6] We review decisions regarding dismissal pursuant to the doctrine of *forum non conveniens* for an abuse of discretion. *See Alley*, 1998 ME 33, ¶ 6, 707 A.2d at 79; *Corning v. Corning*, 563 A.2d 379, 380 (Me.1989) (noting adoption of factors used by United States Supreme Court in making determination).

[¶ 13] As noted above, the children have spent the majority of their lives in Maine, the current custody order provides for the children's residence in Maine, the father has relatively extensive connections to Maine compared to the relatively few contacts the mother has with Colorado, and Maine itself has extensive connections to the ongoing litigation between the two parties. Additionally, as recommended by the UCCJA,[7] the Colorado and Maine courts communicated with one another prior to the determination and the Colorado court agreed to defer to the Maine court. Not only did the court not abuse its discretion in its determination, but it followed a model course of conduct by communicating with the alternative forum.

The entry is:

Judgment affirmed.

---

6. Section 1708(1) provides in relevant part:
   **1. Decline to exercise jurisdiction.** A court that has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. 19–A M.R.S.A. § 1708(1) (1998), *repealed and replaced by* P.L.1999, ch. 486, §§ 2–3 (effective Jan. 1, 2000) (codified at 19–A M.R.S.A. § 1751(1) (Supp.1999)).

7. Maine's enactment of the UCCJA provides:

   **4. Communicating with other states.** Before determining whether to decline or retain jurisdiction, the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to ensuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties. 19–A M.R.S.A. § 1708(4) (1998), *repealed and replaced by* P.L.1999, ch. 486, §§ 2–3 (effective Jan. 1, 2000) (codified at 19–A M.R.S.A. § 1740 (Supp.1999)).