STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS.
CLERK'S OFFICE

FEB 20  4 09 PH '01

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-065
REC-CUM- 2/4/2001

HENRY SHANOSKI,

        Appellant

    v.

MARJORIE MILLER,

        Appellee

DECISION ON APPEAL

## FACTUAL BACKGROUND

Henry Shanoski and Marjorie Miller were married in North Carolina in 1988, where they resided until May, 1994. In 1994, both Marjorie and Henry moved to Maine where their daughter Meredith was born on June 30, 1994. On January 28, 1995, Marjorie and Meredith moved back to North Carolina. Henry then filed a complaint for divorce in Maine on March 16, 1995. On March 31, 1997, the district court entered an order and judgment of divorce incorporating a report of referee dated March 28, 1997 and granting the parties shared parental rights. The report of referee and divorce judgment provided for Meredith to spend six weeks with her father during the summer of 1997, one week in the fall, and ten days at Christmas. The report also provided that another reference would be held in January, 1998 to determine future parent-child contact schedules. On January 30, 1998 Dana Cleaves, the referee, took evidence on the contact schedule and ordered that Henry's time with his daughter be increased to two weeks in the spring, fall and at Christmas, and six weeks in the summer and also set forth specific dates of contact through August, 2000.

On June 15, 1999, Marjorie filed a complaint in North Carolina seeking to

modify the Maine custody order. Henry filed a motion in the Maine District Court to enjoin the North Carolina proceedings and to enforce the Maine order's mandatory arbitration provision concerning disputes over Meredith's schedule on July 9, 1999. In an order dated September 1, 1999, Judge Bradley denied Mr. Shanoski's request to enjoin the North Carolina proceedings but ordered Marjorie to comply with the court-ordered arbitration procedure.

On September 15, 1999, a hearing was held in North Carolina on the jurisdictional issue. Following this hearing, Judge Bradley and Judge Richard Chaney of the District Court of North Carolina corresponded regarding jurisdiction. In a November 24, 1999 letter, Judge Chaney questioned Maine's jurisdiction. Judge Bradley responded in a letter dated January 13, 2000 that Maine's continuing jurisdiction was proper. In a February 28, 2000 letter, Judge Chaney concluded that the case should proceed in North Carolina. He then issued an order on March 20, 2000 denying Mr. Shanoski's motion to dismiss the North Carolina action and finding that North Carolina had subject matter jurisdiction. That same day, Mr. Shanoski filed a notice of appeal to the North Carolina Court of Appeals.

On April 5, 2000, Mr. Shanoski filed a motion to clarify the dates of contact for Meredith after August, 2000. On April 18, 2000, Ms. Miller filed a motion to decline jurisdiction accompanied by an affidavit agreeing that the parties were obligated to follow the 12-week schedule set by the Maine court. Following a hearing, Judge Bradley issued an order dated June 5, 2000 granting Ms. Miller's motion. This order declined to exercise jurisdiction over the matter based on a consideration of the

factors set forth in § 1751(2) of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA").

The question before the court was "whether Maine, while having jurisdiction, should decline to exercise its jurisdiction on the grounds of inconvenient forum." The Maine district court found that a substantial change in circumstances existed either because the divorce judgment makes no provision for contact after August 31, 2000 or because Meredith, who was only age four when the divorce was granted, was then attending kindergarten and would be in school full time as a first grader in the fall. Judge Bradley then identified the issue before the court as "what contact schedule between Meredith and her father meets the child's best interest," and found that North Carolina was the more convenient and more appropriate forum to determine that issue. Noting that while Meredith has spent 12 weeks a year in Maine and has attended some school sessions here, the child spent far more time, approximately 80%, in North Carolina. Judge Bradley also noted that care providers, teachers and others have had significant contact with Meredith in that state, as well as a number of witnesses from her school in North Carolina, who would give testimony central to the question presented.

On June 12, 2000, Shanoski filed a motion to reconsider based on his agreement that Meredith's 12 weeks of contact in Maine would not occur during her school schedule in North Carolina.[1] Mr. Shanoski also filed a motion for additional

---

[1] Mr. Shanoski argues that this agreement mooted the need for any witnesses to testify as to the extent to which Meredith's contact schedule would interfere with her school schedule in North Carolina.

findings of fact dated June 14, 2000 pursuant to M.R. Civ. P. 52(b). On June 20, 2000, Ms. Miller filed a motion to dismiss Mr. Shanoski's appeal of the North Carolina jurisdictional order, which the North Carolina Court of Appeals subsequently denied. On July 17, 2000, Judge Bradley incorporated the findings in her January 13, 2000 letter to North Carolina Judge Chaney as findings of fact but did not rule on the motion to reconsider. A hearing on that motion was held on August 16, 2000. The next day, Judge Bradley denied the motion to reconsider. Mr. Shanoski filed an amended notice of appeal to the Superior Court on August 24, 2000, appealing the June 5, 2000 order declining to exercise jurisdiction and the August 17, 2000 order denying his motion for reconsideration.

DISCUSSION

## I. Applicable Statute

The UCCJEA took effect in Maine on January 1, 2000. 19-A M.R.S.A. § 1782 (Supp. 2000). However, a "motion or other request for relief made in a child custody proceeding or to enforce a child custody determination that was commenced before January 1, 2000 is governed by the law in effect at the time the motion or other request was made." 19-A M.R.S.A. § 1783 (Supp. 2000). As the uniform comment notes, although a child custody proceeding will last throughout the minority of the child, the commencement of a proceeding prior to the effective date of the UCCJEA does not necessarily mean that jurisdiction will continue to be governed by prior law. 19-A M.R.S.A. § 1783 uniform cmt. If a motion to modify an existing determination is filed after the enactment of the UCCJEA, the provisions of that act

apply. Id. If the motion is filed prior to enactment of the UCCJEA, however, it may be completed under the rules in effect at the time the motion was filed. Id.

Ms. Miller's argument that the UCCJA is the applicable act is based on Mr. Shanoski's July, 1999 Motion to Enforce. That motion was resolved in Judge Bradley's September 1, 1999 order granting Mr. Shanoski's motion. It was Mr. Shanoski's April 5, 2000 Motion to Clarify that commenced the proceedings at issue in Maine. The UCCJEA is therefore the applicable statute.

## II. Maine's Exclusive, Continuing Jurisdiction Under the UCCJEA and PKPA

Jurisdictional questions regarding child custody determinations are controlled both by the UCCJEA, 19-A M.R.S.A. §§ 1731-1783 (Supp. 2000), and the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C.A. § 1738A (West 1994 & Supp. 2000). In the event of a conflict between the provisions of two statutes, the PKPA controls. See Barclay v. Eckert, 2000 ME 10, ¶ 8, 743 A.2d 1259, 1262. Because there is no conflict here, the two statutes should be considered in conjunction with one another. See id.

The PKPA prohibits modification of any custody or visitation determination made by a court of another state if the determination was made consistently with the PKPA. 28 U.S.C.A. § 1738A(a). A court's determination is consistent with the PKPA only if

> (1) such court has jurisdiction under the law of such State; and
> (2) one of the following conditions is met:
>     (A) such State (i) is the home state of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the

commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

....

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

28 U.S.C.A. § 1738A(c). The PKPA provides for the continuing jurisdiction of a state court that has made a child custody or visitation determination as long as that state has jurisdiction under its own laws and that state remains the residence of the child or of any contestant. 28 U.S.C.A. § 1738A(c)(1) & (d).

The UCCJEA provides for Maine's exclusive, continuing jurisdiction over a child custody determination even if the child has acquired a new home state "so long as the general requisites of the 'substantial connection' jurisdiction provisions of Section [1745] are met." 19-A M.R.S.A. § 1746(1) & uniform cmt. Maine, as the original decree state, is the sole determinant of whether its jurisdiction continues. See id.

The Maine District Court would have had jurisdiction under § 1745 of the UCCJEA at the time it entered the initial child custody determination. See 19-A M.R.S.A. § 1745.[2] Accordingly, the district court had exclusive, continuing

_____

2 Under § 1745, Maine has jurisdiction to make an initial child custody determination only if

A. This State is the home state of the child...
B. A court of another state does not have jurisdiction under paragraph A or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under section 1751 or 1752 and:
    (1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
    (2) Substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;

jurisdiction over child custody determinations at the time Mr. Shanoski filed his motion to clarify contact schedule. See 19-A M.R.S.A. § 1746(1). This exclusive jurisdiction continues until a court of this state determines that neither Meredith nor Meredith and Mr. Shanoski have a significant connection with this State and that substantial evidence is no longer available in Maine concerning the child's care, protection, training and personal relationships. See 19-A M.R.S.A. § 1746(1)(A).

Mr. Shanoski argues that where each state was maintaining that it had modification jurisdiction under its own laws, the district court was obligated to apply the PKPA and declare the North Carolina order void. He makes a two-part argument in support of this proposition. First, he argues that the North Carolina court improperly assumed modification jurisdiction under the PKPA. See 28 U.S.C.A. § 1738A(a) & (h). Therefore, he argues, the district court should not have "backed down and allowed North Carolina to proceed to take the case that it was fighting for." Appellant Br. at 13.

The PKPA provides

> A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the *pendency of a proceeding* in a court of another State where such court of that other state is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.

---

C. All courts having jurisdiction under paragraph A or B have declined to exercise jurisdiction on the ground that this State is the more appropriate forum ... or
D. No court of any other state would have jurisdiction under the criteria specified in paragraph A, B or C.

19-A M.R.S.A. § 1745(1) (Supp. 2000).

28 U.S.C.A. § 1738A(g) (emphasis added). Mr. Shanoski argues that proceedings were pending in Maine because Ms. Miller was subject to two Maine orders requiring her to submit any issue in dispute to arbitration. See 3/31/97 Order of Reference; 8/3/98 Order. While Ms. Miller was subject to those orders, no *proceedings* were pending at the time she filed her North Carolina complaint.

Second, he argues that the North Carolina court was prohibited from modifying the Maine order because Maine had not yet declined to exercise its jurisdiction. The PKPA provides

> A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination.

28 U.S.C.S. § 1738A(h). The North Carolina court's failure to modify a Maine custody determination, however, is fatal to this argument. That court merely denied Mr. Shanoski's motion to dismiss for lack of jurisdiction and determined that it had subject matter jurisdiction. See 3/20/00 North Carolina District Court Order. Because the North Carolina court did not modify a custody determination in violation of the PKPA, the district court had no obligation not to decline jurisdiction.

## III. Inconvenient Forum

A court that has jurisdiction under the UCCJEA "*may* decline to exercise its jurisdiction at any time if it determines it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." 19-A

M.R.S.A. § 1751(1) (Supp. 2000) (emphasis added). The use of the word "may" clearly indicates that a court's decision to decline jurisdiction is discretionary. Therefore, the district court's decision to decline jurisdiction is reviewed under an abuse of discretion standard. See Barclay v. Eckert, 2000 ME 10, ¶ 12, 743 A.2d at 1264 (decisions regarding dismissal pursuant to the doctrine of forum non conveniens under UCCJA is reviewed for an abuse of discretion).

Before determining that it was an inconvenient forum, the district court was required to consider whether it was appropriate for the North Carolina court to exercise jurisdiction. See 19-A M.R.S.A. § 1751(2). For purposes of that determination, the district court was required to consider *all relevant factors*, including:

> A. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
> B. The length of time the child has resided outside this State;
> C. The distance between the court in this State and the court in the state that would assume jurisdiction;
> D. The relative financial circumstances of the parties;
> E. Any agreement of the parties as to which state should assume jurisdiction;
> F. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
> G. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
> H. The familiarity of the court of each state with the facts and issues in the pending litigation.

Id. Mr. Shanoski charges the district court with abuse of discretion for failing to consider Factors D, E, G and H, placing too great an emphasis on the location of the

witnesses and considering non-statutory factors. Initially, it must be noted that "all relevant factors" must be considered in addressing whether a court of this state is an inconvenient forum. Id. The wording of this statute indicates that the analyzing court must consider not only those listed factors that are relevant but also that an analyzing court may consider any other relevant non-statutory factors. The district court expressly stated it considered the factors set forth in 19-A M.R.S.A. § 1751(2) in determining whether to decline to exercise jurisdiction over the matter. See June 5, 2000 Order.

### A. Financial Circumstances of the Parties (Factor D)

Information pertinent to this factor was presented to the court in Mr. Shanoski's Verified Opposition to Motion to Decline Jurisdiction. The relative financial circumstances of the parties is not determinative to whether this state is an inconvenient forum. While the district court does not expressly state that it weighed the relative financial circumstances of the two parties, there is no evidence that the district court did not consider this factor.

### B. Past Agreement Regarding Jurisdiction (Factor E)

Mr. Shanoski argues that in the 1997 reference proceeding, the parties agreed that former Maine District Court Judge Dana Cleaves was to be the sole referee to conduct all future proceedings. He also argues that the Order and Divorce Judgment incorporating the Report of Referee stated that the parties agreed that jurisdiction and venue lies in Maine. A review of the procedural history as well as the context in which the alleged agreements to jurisdiction in Maine were made indicates the

10

contrary, however.

On March 28, 1997, the parties signed a joint motion pursuant to Rule 53, requesting that the court refer the divorce matters to Dana Cleaves. By order dated March 31, 1997, the district court ratified the parties' agreement and appointed Dana Cleaves to act as "sole referee to conduct all further proceedings *in this case.*" (Emphasis added). Presumably, the statement "in this case," when taken in context, refers to the divorce.

The Report of Referee dated March 28, 1997 states that the "parties have agreed that the jurisdiction and venue over this divorce matter and the subsequent reference [in 1998] relating to parental contact lies in Maine." 3/28/97 Report of Referee ¶¶ 9, 23. The Report does not, however, assert that jurisdiction over all matters relating to parental contact remains in Maine. Nor does it indicate that the parties agreed that Dana Cleaves would act as the sole referee in all future proceedings.

The parties then moved for acceptance of the referee's report and entry of judgment by joint motion dated March 28, 1997. The March 31, 1997 district court order incorporating this Report of Reference does not state that the parties agreed that jurisdiction and venue lies in Maine. It is apparent from the context in which any statements regarding jurisdiction were made, the parties did not reach an agreement that jurisdiction and venue lies in Maine.

## C. Nature and Location of the Evidence (Factor F)

Mr. Shanoski argues that the district court abused its discretion in allowing

11

Factor F to assume a weight out of all proportion in its inconvenient forum analysis. The June 5, 2000 order does not reveal that the district court allowed this factor to be determinative. The court clearly considered all the relevant factors.

**D. Ability of Each State to Expeditiously Decide the Issue and the Procedures Necessary to Present the Evidence (Factor G)**

Mr. Shanoski argues that because Ms. Miller or any of her out-of-state witnesses could appear via telephone in Maine and testify, Maine's procedures are clearly more fair. See 19-A M.R.S.A. § 1741 (West Supp. 2000). Factor G does not require a court to weigh the relative fairness of procedures in the two states, however. In applying Factor G, a court should consider "the ability of a court to arrive at a solution to all the legal issues surrounding the family." 19-A M.R.S.A. § 1751 uniform cmt. A court could also consider "the different procedural and evidentiary laws of the two States, as well as the flexibility of the court dockets." Id.

The district court did consider the different procedural and evidentiary laws as well as what would be required to present evidence in the hearing. In its June 5, 2000 order, the district court noted that a number of witnesses from Meredith's school in North Carolina have testimony central to the issue of what contact schedule meets her best interest. It also noted that while it may not be convenient for witnesses from Maine to attend proceedings in North Carolina, provisions can be made to obtain their testimony telephonically or by deposition to avoid the time and expense of travel. See, e.g., N.C. GEN. STAT. § 50A-18 (1998) (testimony of witnesses, including a party and child, may be taken by deposition); N.C. GEN. STAT. §

50A-11 (1998) (court may order that another party pay the travel expenses of a party located outside North Carolina who is ordered to appear before the court); N.C. R. Civ. P. 30(b)(7) (deposition may be taken by telephone). Accordingly, the district court did not abuse its discretion in analyzing and applying this factor.

## E. Familiarity of the Two Courts with the Facts and Issues (Factor H)

Factor H requires a court to consider the "familiarity of the court of each state with the facts and issues *in the pending litigation.*" 19-A M.R.S.A. § 1751(2)(H). Mr. Shanoski argues that Maine is the court most familiar with the facts of the case because there have been numerous proceedings in Maine since 1995, all of the judges, mediators and arbitrators who have worked on the case are located in Maine and the legal files are in Maine's courts. While it is true that all of the proceedings thus far have occurred in Maine, that does not mean that the courts of this state are more familiar with the facts and issues in determining the impact of the contact schedule on Meredith's school attendance and performance in North Carolina. It seems unlikely that Maine would have a greater familiarity of the facts underlying this issue than North Carolina. The district court opinion reflects that it came to a similar conclusion.

## F. Consideration of Non-Statutory Factors

The district court is charged with an abuse of discretion in considering the percentage of time Meredith spends in the respective states. In both the June 5, 2000 order and the August 17, 2000 order denying Mr. Shanoski's motion for reconsideration, the district court states that North Carolina is the more appropriate

13

forum because Meredith, then six, had been residing in North Carolina since infancy and spends 80% of her time in that state. The wording of § 1751(2) indicates that an analyzing court must consider "all relevant factors," including those listed factors. The district court's consideration of this un-listed factor that is relevant to whether it is appropriate for a court of another state to exercise jurisdiction was not an abuse of discretion.

## IV. Additional Findings of Fact

In his June 14, 2000 Motion for Additional Findings of Fact, Mr. Shanoski requested the court to explain how Factors D,E,F,G and H have changed since Judge Bradley's January 13, 2000 letter and the impact, if any, of the North Carolina Judge's jurisdiction decision on the district court's forum non conveniens decision. By order dated July 17, 2000, the district court stated that the January 13, 2000 letter sets forth the basis for Maine's jurisdiction over the matter and the order of June 5, 2000 provided the factual and legal basis for the court's decision to decline continuing jurisdiction. The district court adopted those findings and conclusion and determined that no further findings were necessary.

Mr. Shanoski argues that it was an abuse of the Court's discretion not to address specifically each of the forum non conveniens factors as he requested. The district court had a duty pursuant to M.R. Civ. P. 52 "to make findings sufficient to inform the parties of the reasoning underlying its conclusions and to provide for effective appellate review." Sewall v. Sartvanich, 1999 ME 46, ¶ 9, 726 A.2d 224, 226. The district court did not abuse its discretion in not addressing each of the factors

14

individually in the July 17, 2000 order. The findings incorporated from the January 13, 2000 letter support Maine's exercise of jurisdiction. The facts set forth in the June 5, 2000 order are sufficient to inform the parties of the reasoning underlying the district court's conclusion that North Carolina is the more appropriate forum.

The entry is

Appellant Henry Shanoski's appeal is DENIED.

Dated at Portland, Maine this 28th day of February, 2001.

_____
Robert E. Crowley
Justice, Superior Court

Date Filed __07-26-00__     __CUMBERLAND__     Docket No. __AP 00-065__

County

Action __APPEAL FROM DC - DIVORCE__

HENRY SHANOSKI                   MARJORIE SHANOSKI

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JOHN S. CAMPBELL, ESQ 775-2330<br>PO BOX 369, PORTLAND ME 04112 | KENNETH ALTSHULER, ESQ   773-0275<br>257 DEERING AVE., PORTLAND ME 04103 |

| Date of Entry | |
|---|---|
| 2000<br>July 26 | Received 07-26-00:<br>Complaint Summary Sheet filed. |
| "    " | Plaintiff's Notice of Appeal to the Superior Court filed.<br>All paperwork received from 9th District Court, Division<br>of Southern Cumberland (95 DV 233). |
| " " | On 7-26-00.<br>Briefing schedule mailed. Appellant's brief due 9-4-00. |
| Aug. 18 | Received 08/18/00:<br>Plaintiff's Motion to Suspend the Deadline for Filing an Appeal Brief<br>Pending Final Judgment of the District Court filed. |
| Aug. 28 | Received 8-24-00.<br>Appellant's motion for enlargement of the period for filing<br>appeal brief filed. |
| " " | Letter from John Campbell Esq. withdrawing motion for suspension of<br>period for filing appeal brief filed. |
| Aug. 29 | Received 8-24-00.<br>Order, filed. (Crowley, J.)<br>   IT IS HEREBY ORDERED that the deadline for filing of the Appellant's<br>   Brief (set for September 4, 2000) shall be suspended until further<br>   notice.<br>Copies mailed John Campbell, Esq. and Kenneth Altshuler, Esq. on 8-29-00. |
| Aug. 31 | Received 8-31-00.<br>Order, filed. (Crowley, J.)<br>   Plaintiff's Motion for Enlargement of the period for filing an Appeal<br>   Brief, up to and including September 19, 2000 is granted.<br>Copies mailed John Campbell, Esq. and Kenneth Althsuler, Esq. on 8-31-00. |
| " " | Plaintiff's amended notice of appeal to Superior Court filed. |
| " " | Additional paperwork received from 9th District Court Division of |