**CONSERVATORSHIP OF
JUSTIN R. et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 21, 1995.
Decided July 27, 1995.

Melissa Moll, Hale & Hamlin, Ellsworth, for petitioners.

Joseph T. Walsh, Jr., Bangor, for respondents.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

Freda O. and Laurence E. Reynolds, paternal grandparents of twins, Justin and Joshua Reynolds, appeal from judgments entered in the Hancock County Probate Court (*Patterson, J.*) dismissing their petitions to be appointed guardians and conservators of the twins and appointing the twins' mother, Beatrice Reynolds Valenzuela, as conservator for Justin. Beatrice cross-appeals the court's appointment of the grandparents as conservators for Joshua. We affirm the judgments.

### Facts

Beatrice and Laurence S. Reynolds married in February 1989. At the time both were serving on active duty in the Army. Beatrice had a three-year-old son, Randy, by a previous marriage. Justin and Joshua were born in July 1989 while the couple was stationed in Germany.

Laurence and Beatrice separated for a ten-month period in 1990 during which period the children all resided with Beatrice. Because of the possibility of being deployed in support of the Gulf War, the couple took the three children to stay with Beatrice's mother in California. In June 1991 the twins visited their grandparents in Maine before returning to their parents in Germany. When the couple separated again in August 1991, Randy stayed with Beatrice and the twins stayed with Laurence. The twins went to live with their grandparents in Maine in February 1992. Laurence was discharged from the Army later that month and returned to Maine to live with his sons and his parents.

In 1992 Beatrice was transferred to California. In October the twins came to visit her and stayed with her for two months. In December Beatrice and Laurence entered into a marital settlement agreement providing for the joint legal custody of the twins, but with Laurence having primary physical custody of them. The agreement also gave Beatrice the right to visit the twins at all reasonable times and obligated her to pay child support of $300 per month and provide medical and dental insurance. A judgment of divorce was entered in April 1993 incorporating this agreement. Thereafter and until

the time of the events giving rise to the instant petitions, Beatrice's only contact with the twins was a few telephone calls and the sending of gifts at birthdays and Christmas.

Following her discharge from the Army, Beatrice moved to Las Vegas where she eventually secured a job, remarried, and purchased a house. In the spring of 1994, Beatrice arranged for the twins to fly to Las Vegas and visit her for three weeks in June.

On May 19, 1994, Laurence was killed in a motorcycle accident. Laurence had a $200,-000 life insurance policy. In what the parties believe to have been a mistake, the policy named Justin as the principal beneficiary and Joshua as a contingent beneficiary instead of a co-beneficiary. The grandparents obtained an order appointing themselves temporary guardians of the twins and filed petitions seeking to be appointed guardians and conservators pursuant to 18-A M.R.S.A. § 5-207(b) (1981).

The Probate Court held a hearing on July 12 at which the grandmother and mother testified. Although the court indicated that the grandparents had failed to meet their burden of proving a suspension of Beatrice's parental rights, it continued the appointment of the grandparents as temporary guardians until a further non-testimonial hearing could be held at which the parties could make their arguments. During the interim period Beatrice filed petitions seeking to be appointed conservator for the twins and the grandparents had the twins examined by R. Maxwell Goode, a licensed clinical social worker. Goode drafted a report recommending that the grandparents rear the twins and the grandparents filed a motion requesting that the court "consider Mr. Goode's testimony regarding the best interest of the children prior to rendering its decision."

The court denied the motion on the ground that the issue of the best interests of the children does not arise in this case unless Beatrice's parental rights were terminated by circumstances. After a further hearing the court entered orders denying the grandparents' petitions for guardianship. Citing a potential conflict of interest between the twins with respect to the insurance policy,

the court appointed Beatrice as Justin's conservator and the grandparents as conservators for Joshua. We consolidated the appeals that followed.

## Guardianship

■ "A minor's parents are its natural guardians and the law commits the care and custody of the child to them." *In re Krystal S.*, 584 A.2d 672, 674 (Me.1991). The Probate Court, however, "may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order." 18-A M.R.S.A. § 5-204 (1981).

■ The grandparents first contend that the court erred in finding that they failed to prove that Beatrice's parental rights had been "terminated or suspended by circumstances." Specifically, they argue that Beatrice's parental rights were suspended because she abandoned the twins. " 'Abandonment' means any conduct on the part of the parent showing an intent to forego parental duties or relinquish parental claims." 22 M.R.S.A. § 4002(1–A) (1992).[1] On a direct appeal from the Probate Court, we review that court's findings for clear error. *Estate of Paine*, 609 A.2d 1150, 1152 (Me. 1992). Because the grandparents had the burden of proof, they must establish on appeal that the evidence before the Probate Court compelled the court to find that Beatrice's parental rights had been terminated or suspended. *In re Krystal S.*, 584 A.2d at 673.

The record in this case reveals that Beatrice agreed to allow Laurence to have primary physical custody of the twins and that she has been geographically separated from them. On the other hand, it was undisputed that she made child support payments and that, prior to Laurence's death, the parties had arranged for the twins to visit her for three weeks in June 1994. Moreover, Beatrice testified that she never intended to abandon the twins and had agreed to allow Laurence to have custody of them because she had custody of her other son, Randy. Based on the evidence before it, the court was not compelled to find that Beatrice intended to forego parental duties or relinquish parental claims to the twins.

■ The grandparents next argue that the court should have considered Goode's report in order to determine whether an alternative custody arrangement should have been implemented pursuant to 18-A M.R.S.A. § 5-207(b).[2] Contrary to their contention, section 5-207(b) does not authorize the Probate Court to fashion "an alternative custody arrangement" without first finding a termination or suspension of parental rights. *See In re James John L.*, 601 A.2d 630, 631–32 (Me.1992); *In re Krystal S.*, 584 A.2d at 673 n. 4, 674–75. *See also Santosky v. Kramer*, 455 U.S. 745, 760 n. 10, 102 S.Ct. 1388, 1398 n. 10, 71 L.Ed.2d 599 (1982).

There is no dispute that Goode's testimony addresses the sole issue of the best interests of the twins. Because this issue is not relevant to the issue of whether Beatrice's parental rights had been suspended, it was not error for the court to refuse to consider Goode's testimony when ruling on the threshold issue of the suspension of parental rights.

---

1. The intent to forego parental duties or relinquish parental claims may be evidenced by:

    A. Failure, for a period of at least one year, to communicate meaningfully with the child;
    B. Failure, for a period of at least one year, to maintain regular visitation with the child;
    C. Failure to participate in any plan or program designed to reunite the parent with the child;
    D. Deserting the child without affording means of identifying the child and his parent or custodian;
    E. Failure to respond to notice of child protective proceedings; or

F. Any other conduct indicating an intent to forego parental duties or relinquish parental claims.
22 M.R.S.A. § 4002(1–A) (1992).

2. The statute provides:
    Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 5–204 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment. In other cases the court may dismiss the proceedings, or make any other disposition of the matter that will best serve the interest of the minor.

*Conservatorship*

■ Both parties appeal the court's decision to appoint Beatrice as conservator for one twin and the grandparents as conservators for the other twin. When appointing a conservator for a minor, the Probate Court must consider the parent of the child before the child's grandparents. 18–A M.R.S.A. § 5–410(a)(5)–(6) (1981). "The court, for good cause, may pass over a person having priority and appoint a person having less priority or no priority." *Id.* § 5–410(b).

■ The potential conflict between the twins with respect to determining the proper payment of benefits pursuant to the insurance policy is apparent. The policy on its face names Justin the sole beneficiary. The parties agreed that this result was not Laurence's intention and they anticipate an action to declare that the proceeds be paid to the twins as co-beneficiaries. This potential conflict constitutes good cause to pass over Beatrice and appoint the grandparents as conservators for Joshua. Contrary to the grandparents' contentions, the record does not compel a finding that there was good cause to pass over Beatrice with respect to both twins.

The entry is:

Judgments affirmed.

All concurring.