2001 ME 87

**In re AMBERLEY D.**

Supreme Judicial Court of Maine.

Argued May 15, 2001.
Decided June 6, 2001.

Amy E. Keck (orally), Devin A. Rice, Pine Tree Legal Assistance, Inc., Bangor, for appellant.

William L. Dawson, Jr. (orally), Belfast, and John E. Harrington Jr., Winterport, for appellees, Diana and Richard B.

Robert E. Meggison (orally), Belfast, guardian ad litem.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

ALEXANDER, J.

[¶ 1] Joann R., mother of Amberley D., appeals the judgment of the Waldo County Probate Court (*Mailloux, J.*) appointing Diana and Richard B. coguardians of Amberley pursuant to 18–A M.R.S.A. § 5–204 (1998 & Supp.2000). On appeal, Joann contends that: (1) the court erred by appointing temporary guardians without notice to her; (2) the court lacked jurisdiction and venue over the guardianship petition; (3) no clear and convincing evidence supported the petition; and (4) the guardianship statute is unconstitutional as applied. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Amberley D. was born on January 19, 1985, and grew up with her mother, Joann R., her stepfather, Charles R., and her two siblings, moving many times and living in Maine, Vermont and several other states.[1] Joann and Charles separated several times, during which Joann and the children utilized various temporary living arrangements, including friends' homes, motels, and a shelter.

[¶ 3] In the spring of 1999, Joann and Charles separated and filed for divorce in Vermont. Joann and the children then moved to New Hampshire, staying in motels and with friends. Amberley, who was in the eighth grade, stopped going to school. By this time, she had been enrolled in approximately twenty-seven different schools. Amberley testified that Joann was abusing drugs and alcohol, providing them to her, staying out all night drinking, and engaging in sexual activity in front of her. Amberley also testified that she had been sexually molested several times, and that she reported this to Joann, who had done nothing.

[¶ 4] In late 1999, Amberley ran away on two occasions. She was found at her boyfriend's home and then at Charles' home, and returned to Joann. In January 2000, Amberley ran away again to Charles' home in Vermont. Charles drove her to a friend's place in Massachusetts. From there, Amberley took a bus to Augusta to meet Charles' parents, Diana and Richard B., who reside in Stockton Springs. Joann notified law enforcement agencies that Amberley was missing, then departed for a California vacation. Upon her return, she was informed by the Waldo County Sheriff's Office that Amberley was with Diana and Richard B.

[¶ 5] Shortly after Amberley's arrival, Diana and Richard B. filed a petition requesting appointment as temporary coguardians of a minor pursuant to 18–A M.R.S.A. § 5–207(c) (Supp.2000).[2] After a hearing, the court granted a temporary,

---

1. Amberley's biological father, Mark M., never developed a relationship with her and did not participate in the proceedings.

2. Section 5–207(c) states that "[i]f necessary, the court may appoint a temporary guardian, with the status of an ordinary guardian of a minor, but the authority of a temporary guardian may not last longer than 6 months."

six-month guardianship, finding that Amberley was in an intolerable living situation at her mother's, inadequately cared for, and subject to abuse by others. Joann was served with notice of the appointment and, representing herself, filed a motion to dismiss the temporary guardianship. Subsequently, through counsel, she filed another motion to dismiss the guardianship and an answer to the petition. After a hearing, the court denied the motion.

[¶ 6] A hearing on full guardianship was held, which Joann had notice of and participated in. The court found by clear and convincing evidence a history of abuse, neglect, and mistreatment, and a living situation that was at least temporarily intolerable for Amberley, and that the guardians would provide a living situation in her best interest. *See* 18–A M.R.S.A. § 5–204(c). The court then entered an order appointing Diana and Richard B. full coguardians of Amberley pursuant to 18–A M.R.S.A. § 5–204.[3]

[¶ 7] The record does not indicate that there was any other prior or pending order from any other court in any state addressing custody or parental rights for Amberley during this time.

[¶ 8] Joann brought this appeal from the Probate Court's order.

## II. NOTICE

 [¶ 9] The Probate Court, in appointing Diana and Richard B. temporary guardians of Amberley, waived notice of hearing to Amberley's parents pursuant to 18–A M.R.S.A. § 5–207, which states that "[u]pon a showing of good cause, the court may waive service of the notice of hearing on any person, other than the minor, if the minor is at least 14 years of age." Joann contends that the Uniform Child Custody Jurisdiction, and Enforcement Act (UCCJEA), 19–A M.R.S.A. §§ 1731–1783 (Supp.2000), which defers to state notice provisions for child custody determinations, is preempted by the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (1994 & Supp.2000), and that she was entitled to notice of the emergency guardianship hearing under the PKPA.

 [¶ 10] The UCCJEA provides that notice to persons outside the state "may be given in a manner prescribed by the law of this State for service of process or by the law of the state in which the service is made." 19–A M.R.S.A. § 1738(1). In the event of a conflict, the PKPA preempts the UCCJEA. *See Barclay v. Eckert,* 2000 ME 10, ¶ 8, 743 A.2d 1259, 1262; *Guardianship of Gabriel W.,* 666 A.2d 505, 508 (Me.1995). However, the PKPA addresses jurisdictional issues only when existing orders have been entered by courts of other states concerning the custody or visitation of a child. *See Thompson v. Thompson,* 484 U.S. 174, 177, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) ("[a]s the legislative scheme suggests, and as

---

**3.** Section 5–204 states in relevant part:
 The court may appoint a guardian or coguardians for an unmarried minor if:
 (a) All parental rights of custody have been terminated or suspended by circumstance or prior court order;
 (b) Each living parent whose parental rights and responsibilities have not been terminated or the person who is the legal custodian of the unmarried minor consents to the guardianship and the court finds that the consent creates a condition that is in the best interest of the child; or

 (c) The person or persons whose consent is required under subsection (b) do not consent, but the court finds by clear and convincing evidence that the person or persons have failed to respond to proper notice or a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child.

Congress explicitly specified, one of the chief purposes of the PKPA is to avoid jurisdictional competition and conflict between State courts") (citation omitted). The PKPA is not applicable in this case because no competing custody order regarding Amberley was pending or entered in another state.[4]

### III. DUE PROCESS

[¶ 11] Joann also contends that 18–A M.R.S.A. § 5–207, as applied, violates due process by depriving her of fundamental parental rights. In assessing what process is due, we apply the *Mathews* factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*In re Heather C.*, 2000 ME 99, ¶ 22, 751 A.2d 448, 454 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). *See also Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291, 297–98 ("[i]f we can reasonably interpret a statute as satisfying those constitutional requirements, we must read it in such a way, notwithstanding other possible unconstitutional interpretations of the same statute").

[¶ 12] Joann has a fundamental parental right, and the government has a significant interest in protecting children. *See Heather C.*, 2000 ME 99, ¶¶ 23–28, 751 A.2d at 454–56. The risk of a due process violation occurs when an emergency guardian may be appointed without notice to parents, temporarily depriving them of parental rights, before a hearing takes place. However, section 5–207(c) limits the emergency guardianship to six months. Further, upon notice that a guardian has been appointed, a parent can petition for removal of the guardian pursuant to 18–A M.R.S.A. § 5–212 (1998),[5] entitling them to a hearing. At the hearing, the guardian has the burden of demonstrating that continuation of the guardianship is in the child's best interest. 18–A M.R.S.A. § 5–212(d). Joann received notice of the six-month guardianship appointment, filed a motion to dismiss, and a prompt hearing was held on her motion, at which her attorneys were present. She also received notice of and participated in the hearing on full guardianship. Thus, the guardianship statute, providing for waiver of notice in limited circumstances, but with subsequent opportunity to be heard, did not violate Joann's due process rights.

### IV. JURISDICTION

[¶ 13] Joann contends that New Hampshire has jurisdiction over the guardianship petition pursuant to the PKPA and the UCCJEA. As set forth above, the PKPA is not directly at issue

---

**4.** However, the PKPA is relevant to initial custody determinations by providing guidelines to prevent jurisdictional disputes. *See Wambold v. Wambold*, 651 A.2d 330, 332 (Me. 1994).

**5.** Section 5–212 reads in relevant part:
(a) Any person interested in the welfare of a ward, or the ward, if 14 or more years of age, may petition for removal of a guardian on the ground that removal would be in the best interest of the ward. A guardian may petition for permission to resign. A petition for removal or for permission to resign may, but need not, include a request for appointment of a successor guardian.
(b) After notice and hearing on a petition for removal or for permission to resign, the court may terminate the guardianship and make any further order that may be appropriate.

where no competing court order is involved. However, the jurisdictional requirements of the PKPA, which are similar but not identical to the UCCJEA, must be met, or the decree risks being denied full faith and credit by courts of other states. *See Wambold v. Wambold,* 651 A.2d 330, 333 (Me.1994).

[¶ 14] Both the PKPA and the UCCJEA provide that a state has jurisdiction over a child custody proceeding if the state is the "home state" of the child on the date the proceeding is commenced, or was the home state within six months before the date the proceeding is commenced.[6] *See* 28 U.S.C. § 1738A(c); 19–A M.R.S.A. § 1745. The PKPA and the UCCJEA define the home state as the state in which the child lived with a parent, or a person acting as a parent, for at least six consecutive months immediately before the commencement of a child custody proceeding, and include periods of temporary absence as part of the period. 28 U.S.C. § 1738A(b)(4); 19–A M.R.S.A. § 1732(7).

[¶ 15] Immediately prior to the filing of the temporary guardianship petition, Amberley lived in New Hampshire, but for less than six months. Nevertheless, Joann contends that New Hampshire is Amberley's home state because she lived there for almost six months, last attended school there, and had contacts with individuals providing services in the state, such as her physician and the New Hampshire Department of Health and Human Services' workers concerning her truancy. However, this evidence is inadequate because the six-month requirement was not met, due to Joann and Amberley's transitory living situation. New Hampshire cannot be considered Amberley's home state.

[¶ 16] When the child has no home state, the PKPA and the UCCJEA require the court to examine whether a sufficiently significant connection and substantial evidence exists to exercise jurisdiction. Pursuant to the PKPA, in the absence of a home state, a state can exercise jurisdiction when it is in the child's best interest because "the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence," and "substantial evidence" is available in the state concerning the child's care. 28 U.S.C. § 1738A(c)(2)(B). The corresponding UCCJEA provision, which does not include the "best interest" language, states that jurisdiction is proper when "the child and at least one parent or a person acting as a parent" has a significant connection with the state. 19–A M.R.S.A. § 1745(1)(B)(1).

[¶ 17] Diana and Richard B. are residents of Maine. They have had physical custody and care of Amberley since her arrival in this state, and they are the parents of her stepfather. The record indicates that Amberley has visited them on a regular basis in the past, and that she lived and attended school in Maine for periods during 1991–97. Consequently, the significant connection and substantial evidence requirements were satisfied under the UCCJEA and the PKPA, and the Probate Court has jurisdiction over the guardianship petition. *See Gabriel W.,* 666 A.2d at 509–10.

[¶ 18] Regarding Joann's claim that venue did not exist, under 18–A M.R.S.A. § 5–205 (1998), venue for guardianship proceedings for minors is "in the place where the minor resides or is present." Amberley's presence within Maine

---

**6.** The UCCJEA's child custody jurisdiction provisions generally track the PKPA's, although they differ slightly in some respects. *See Wambold,* 651 A.2d at 332–33; 19–A M.R.S.A. § 1745 comment (2000); 19–A M.R.S.A. § 1748 comment (2000).

was determinative in establishing venue. *See Guardianship of Zachary Z.*, 677 A.2d 550, 552–53 (Me.1996).

## V. SUFFICIENCY OF THE EVIDENCE

■ [¶ 19] Pursuant to 18–A M.R.S.A. § 5–204(c), absent the consent of a parent or legal custodian to the guardianship appointment, the Probate Court must find by clear and convincing evidence that "a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child." Neither the child protective statute, 22 M.R.S.A. §§ 4001–4091 (1992 & Supp.2000), nor the protection from abuse statute, 19–A M.R.S.A. §§ 4001–4014 (1998 & Supp.2000), prohibits the Probate Court from appointing emergency guardians for minors, absent parental consent, when the requisite findings are made.

■ [¶ 20] On a direct appeal from the Probate Court, we review the court's findings for clear error. *See Conservatorship of Justin R.*, 662 A.2d 232, 234 (Me. 1995) (citing *Estate of Paine*, 609 A.2d 1150, 1152 (Me.1992)). In its guardianship order, the court found that the testimony established a history of abuse, neglect and mistreatment of Amberley by her mother. Among the evidence cited by the court was the unstable living arrangement involving multiple moves, and Amberley's fear for her own safety. The court further cited the testimony that Joann used alcohol and marijuana and provided them to Amberley, and that she engaged in sexual activity in Amberley's presence. In addition, the court cited Joann's apparent disregard for

Amberley's well-being in taking a vacation when she was missing. The court determined that Diana and Richard B., with whom Amberley had spent considerable time during her life, offer her a stable, loving home and have met her physical, educational, emotional, and social needs.

■ [¶ 21] The evidence is sufficient to support the court's findings that a living situation was created that was at least temporarily intolerable for Amberley and that Diana and Richard B. provide a living situation in her best interests. Joann claims that the testimony presented at the hearing was self-interested and conflicting. However, it is the factfinder's responsibility to assess the credibility of witnesses and the weight and significance of the evidence. *Guardianship of Boyle*, 674 A.2d 912, 913 (Me.1996) (citation omitted). Absent clear error, we defer to that assessment. *Id.*

■ [¶ 22] Amberley's age and her participation in the proceedings further supports the court's best interest determination. Amberley was fifteen at the time the petition was filed and granted, and the record indicates she nominated Diana and Richard B. to be her guardians pursuant to 18–A M.R.S.A. § 5–206 (1998).[7] Minors who are older are permitted, under certain circumstances, to exercise a greater degree of choice. *See, e.g.*, 15 M.R.S.A. § 3506–A (Supp.2000) (allowing sixteen-year-olds to seek emancipation). The court did not err in appointing guardians based on this evidence.

## VI. CONSTITUTIONALITY

■ [¶ 23] Apart from her notice claim, Joann challenges the constitutionality of the guardianship statute by contend-

---

7. Section 5–206 states in relevant part that "[t]he court shall appoint a person nominated by the minor, if the minor is 14 years of age or older, unless the court finds the appointment contrary to the best interests of the minor."

ing her parental rights have effectively been terminated, but that unlike a child protective termination proceeding, no home study was made, and no agency or individual will work with Joann towards reunification. However, guardianship determinations are not final. Under 18–A M.R.S.A. § 5–212(a), any person who is interested in the welfare of the ward, or the ward if over fourteen years old, may petition for removal of the guardian. When the guardian does not consent to removal, the guardian has the burden of showing, by a preponderance of the evidence, that continuation of the guardianship is in the best interest of the ward pursuant to 18–A M.R.S.A. § 5–212(d).[8] Because the parent retains the right to regain custody, the same degree of procedural safeguards as in termination proceedings is not constitutionally required. *See, e.g., In re Sabrina M.*, 460 A.2d 1009, 1015–16 (Me.1983) ("the nature of the interests concerned in a child protection proceeding significantly differs from that in a proceeding to terminate parental rights").

[¶ 24] Finally, we do not address the question of visitation. The record does not indicate that Joann has made an effort to obtain contact with Amberley, or that Diana and Richard B. attempted to restrict visitation between them. As a result, this issue is not reached.

The entry is:

Judgment affirmed.

---

8. Because Joann has not yet petitioned for removal of the guardian, we do not reach her claims that the process for such a petition would violate her due process rights.