2003 ME 89

**GUARDIANSHIP OF EMMA M.**

Supreme Judicial Court of Maine.

On Briefs: June 26, 2003.
Decided: July 16, 2003.

. . . .

Lawrence E. Merrill, Bangor, for appellant.

Kerry Clark Jordan, Griffin & Jordan, LLC, Orono, for appellee.

David F. Szewczyk, Bangor, Guardian ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] The mother of Emma M. appeals from a judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) granting Emma's paternal grandparents' petition for guardianship of Emma, pursuant to 18–A M.R.S.A. § 5–204(c) (1998). The mother contends, inter alia, that the trial court should be limited to an examination of the child's living conditions on the petition date or at the hearing date. We disagree and affirm the judgment of the Probate Court.

[¶ 2] Testimony presented to the Probate Court described incidents of the mother's abuse of Emma, and other evidence presented before the court indicated the mother has a history of self-abuse. During the course of the Probate Court hearings on December 3 and 9, 2002, all witnesses, including the mother, agreed that the grandparents could provide the best home for Emma at that time. The mother testified, moreover, that she was not able to take care of Emma on her own at that time.

[¶ 3] Section 5–204 provides, in relevant part:

The court may appoint a guardian or coguardians for an unmarried minor if:

. . . .

(c) The person or persons whose consent is required under subsection (b) do not consent, but the court finds by clear and convincing evidence that the person or persons have failed to respond to proper notice or a living situation has been created that is at least temporarily intolerable for the child even though the living situation does not rise to the level of jeopardy required for the final termination of parental rights, and that the proposed guardian will provide a living situation that is in the best interest of the child.

18–A M.R.S.A. § 5–204. The interpretation of a statute is a question of law that we review de novo. *In re Jeremiah Y.*, 2002 ME 135, ¶ 7, 804 A.2d 357, 359. We conclude that the Probate Court is not limited to an examination of a child's living situation on the date of the petition or to the child's living situation at the date of the hearing when it considers section 5–204(c)'s "intolerable living situation." *See In re Amberley D.*, 2001 ME 87, ¶¶ 19–21, 775 A.2d 1158, 1165; *cf. In re Nathaniel B.*, 1998 ME 99, ¶ 6, 710 A.2d 921, 922 (finding no temporal scope limitation to the trial court's examination of evidence when analyzing grounds for termination of parental rights). The court appropriately examined evidence of the mother's prior abuse to ascertain the child's living situation in the context of determining her current ability to care for her daughter. *See In re Amberley D.*, 2001 ME 87, ¶¶ 20–21, 775 A.2d at 1165 (holding sufficient evidence existed to support trial court's finding that an "intolerable living situation" existed, after considering mother's history of abuse, neglect, and mistreatment of child). The mother's remaining contentions are without merit.

The entry is:

Judgment affirmed.