No. 2--05--1061

IN THE
APPELLATE COURT OF ILLINOIS
SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF KATHARINE L. DIAZ, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellant, | ) ) ) | |
| and | ) ) | No. 05--D--1139 |
| SCOTT A. DIAZ, | ) ) ) | Honorable Jorge L. Ortiz, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Petitioner, Katharine L. Diaz, appeals the trial court's order dismissing for lack of subject matter jurisdiction the child custody portion of the dissolution petition she filed against respondent, Scott A. Diaz. The trial court granted Scott's motion to dismiss for lack of subject matter jurisdiction (735 ILCS 5/2--619(a)(1) (West 2004)), finding that Illinois was not the home state of the parties' minor child, Madalyn, pursuant to the Uniform Child-Custody Jurisdiction and Enforcement Act (the UCCJEA) (750 ILCS 36/101 et seq. (West 2004)). The trial court also denied Katharine's request to find that temporary emergency jurisdiction existed. We reverse and remand.

Katharine and Scott were married in Illinois in March 2003. The record reflects that the parties lived in Illinois until August 2003, when Scott moved to Michigan. Katharine remained in Illinois until October or November 2003, and then moved to Michigan. Katharine and Scott lived together in Michigan until December 2003 or January 2004, when Katharine returned to Illinois to

live with her mother, Diane Roisland, in Lake Zurich. The record further reflects that, over the next few months, Katharine moved back and forth between Michigan and Illinois. On May 22 or 23, 2004, Katharine returned to Illinois to live with Roisland in Lake Zurich.

Madalyn was born in Lake County on October 22, 2004. Katharine and Madalyn lived in Lake Zurich with Roisland until December 19 or 20, 2004, when Katharine and Madalyn moved to Michigan to live with Scott. Katharine, Scott, and Madalyn lived together in Michigan until May 26, 2005, when Katharine and Madalyn returned to Illinois to live with Roisland.

On June 7, 2005, Katharine filed a petition for dissolution of marriage in the circuit court of Lake County. In her petition, Katharine sought sole custody of Madalyn. On July 21, 2005, Scott filed a motion to dismiss pursuant to section 2--619(a)(1) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--619(a)(1) (West 2004)). In his motion, Scott argued that the trial court lacked subject matter jurisdiction under the UCCJEA to make an initial child custody determination, because Illinois was not the home state of Madalyn. Instead, Scott argued that Michigan had subject matter jurisdiction over the initial child custody determination. In support of his motion, Scott attached his own affidavit, in which he averred that Illinois had not been Madalyn's home state for more than six months.

On August 8, 2005, Katharine filed a response to Scott's motion to dismiss. In her response, Katharine argued that Illinois did have subject matter jurisdiction under the UCCJEA because Illinois was the home state of Madalyn. Katharine attached to her response two affidavits and a letter. In her own affidavit, Katharine averred that, during her pregnancy, Scott had terminated her medical insurance and that, after Madalyn's birth, Scott had not devoted time to the care and rearing of Madalyn. Katharine also averred that she had been Madalyn's primary caregiver since her birth.

Katharine further averred that, on more than one occasion, Scott told her to leave the Michigan residence and return to Illinois to live with her mother because he did not want her there anymore.

Katharine also attached the affidavit of her mother, Diane Roisland. In the affidavit, Roisland averred that Katharine and Madalyn lived with her in Lake Zurich and that Katharine was Madalyn's primary caregiver. Roisland also averred that she assisted Katharine with the care, feeding, and medical needs of Madalyn. Roisland averred that she has assisted Katharine in obtaining medical aid and food supplements from Illinois state agencies for Katharine and Madalyn and that she provided financial assistance for them.

Also attached to Katharine's response was a July 19, 2005, letter written by Suma Karandikar, who was a clinical director of a counseling center located in Palatine. In the letter, Karandikar stated that, since June 16, 2005, Katharine had regularly attended weekly counseling sessions, had signed up for parenting classes, was working toward gaining training as a hair stylist to increase her earning capacity, and was seeking housing opportunities so that she and Madalyn could live independently.

Within her August 8, 2005, response to Scott's motion to dismiss, Katharine requested the trial court to assume temporary emergency jurisdiction over child custody pursuant to section 204 of the UCCJEA (750 ILCS 36/204 (West 2004)).

On October 3, 2005, the trial court conducted a hearing on Scott's motion to dismiss for lack of subject matter jurisdiction. Following the arguments of the parties, the trial court found that Illinois was not the home state of Madalyn at the time Katharine commenced the action, and it granted Scott's motion to dismiss. The trial court also denied Katharine's request to exercise temporary emergency jurisdiction, finding that neither Madalyn nor Katharine was subjected to or threatened with mistreatment or abuse. The trial court also made a finding pursuant to Supreme

Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of the order. Katharine subsequently filed a timely notice of appeal. 750 ILCS 36/314 (West 2004); 155 Ill. 2d R. 304(a).

On appeal, Katharine essentially presents two issues for review: (1) whether the trial court erred when it granted Scott's motion to dismiss for lack of subject matter jurisdiction the child custody portion of the proceeding, and (2) whether the trial court abused its discretion when it denied her request for temporary emergency jurisdiction.

Scott's motion to dismiss was brought pursuant to section 2--619(a)(1) of the Code (735 ILCS 5/2--619(a)(1) (West 2004)). Under section 2--619(a)(1) of the Code, a party may raise the trial court's lack of subject matter jurisdiction as a defense to the proceedings. 735 ILCS 5/2--619(a)(1) (West 2004). When a party files a motion to dismiss pursuant to section 2--619, all well-pleaded facts and reasonable inferences are accepted as true. In re Marriage of Sullivan, 342 Ill. App. 3d 560, 562 (2003). Conclusions of law, however, are not accepted as true. Sullivan, 342 Ill. App. 3d at 563. As we stated in Sullivan, "[a] reviewing court should conduct an independent review of the propriety of dismissing the complaint and is not required to defer to the trial court's reasoning." Sullivan, 342 Ill. App. 3d at 563. Thus, the standard of review for a dismissal based on section 2--619 of the Code is de novo. In re Marriage of Morreale, 351 Ill. App. 3d 238, 240 (2004).

Scott asserts that we should apply an abuse-of-discretion standard to review the trial court's decision and cites Gagliardo v. Caffrey, 344 Ill. App. 3d 219, 225 (2003), in support thereof. The issue in Gagliardo concerned a review of the trial court's ruling on a motion to disqualify counsel. In considering the issue, the reviewing court noted that an abuse-of-discretion standard was appropriate because the trial court necessarily made factual determinations in resolving the motion. Gagliardo, 344 Ill. App. 3d at 225-26. The present case, however, concerns a motion brought pursuant to

section 2--619 of the Code, for which reviewing courts have consistently held that the appropriate standard of review is de novo. See In re Marriage of Epsteen, 339 Ill. App. 3d 586, 595 (2003), citing Carver v. Nall, 186 Ill. 2d 554, 557 (1999). Accordingly, we reject Scott's request to apply an abuse-of-discretion standard to our review.

"Subject matter jurisdiction refers to the power of the court to hear and determine cases of the general class to which the proceeding in question belongs." Sullivan, 342 Ill. App. 3d at 563, citing Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 334 (2002). The UCCJEA provides state trial courts with a method to resolve jurisdictional questions that arise in interstate child custody disputes. See 750 ILCS 36/101 et seq. (West 2004). Under section 201(a) of the UCCJEA, a court of this state will have subject matter jurisdiction to make an initial child custody determination only if:

"(1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) a court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under Section 207 or 208, and:

(A) the child and the child's parents, or the child and at least one parent

or a person acting as a parent, have a significant connection with this State

other than mere physical presence; and

(B) substantial evidence is available in this State concerning the child's

care, protection, training, and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under Section 207 or 208; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3)." 750 ILCS 36/201(a) (West 2004).

We must construe section 201(a) to determine whether Illinois has the necessary subject matter jurisdiction to make an initial child custody determination in this case. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. In re D.S., 217 Ill. 2d 306, 312 (2005), citing Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 503-04 (2000). In so doing, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the apparent objectives of the legislature when the statute was adopted. D.S., 217 Ill. 2d at 312-13, citing People v. Davis, 199 Ill. 2d 130, 135 (2002). The best indicator of that intent is the language of the statute, giving the language its plain and ordinary meaning. D.S., 217 Ill. 2d at 313, citing Illinois Graphics Co. v. Nickum, 159 Ill. 2d 469, 479 (1994). We must not resort to further aids of statutory construction where the language is clear and unambiguous. D.S., 217 Ill. 2d at 313, citing Davis v. Toshiba Machine Co., America, 186 Ill. 2d 181, 184-85 (1999). The construction of a statute is a question of law, which we review de novo. D.S., 217 Ill. 2d at 313, citing In re Estate of Dierkes, 191 Ill. 2d 326, 330 (2000).

In determining whether a state has subject matter jurisdiction, the UCCJEA gives priority to jurisdiction based on the child's home state. 750 ILCS 36/201(a) (West 2004). To reach the

question of subject matter jurisdiction here, we initially determine whether Illinois is Madalyn's home state. 750 ILCS 36/201(a)(1) (West 2004). If Illinois is not the home state, then we address whether any other state is Madalyn's home state. 750 ILCS 36/201(a)(2) (West 2004). In the absence of a home state, section 201(a) provides alternative methods to be used in determining jurisdiction. 750 ILCS 36/201(a) (West 2004). In determining whether Illinois is Madalyn's home state, we construe the definition of "home state" provided in section 102(7) of the UCCJEA. Section 102(7) of the UCCJEA states:

" 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period." 750 ILCS 36/102(7) (West 2004).

In the present case, Katharine argues that Illinois is Madalyn's home state because Madalyn was born in Illinois and lived there with her until she and Madalyn went to Michigan. Scott counters that Michigan, rather than Illinois, is Madalyn's home state. Scott argues that Illinois could not be the home state, because Madalyn was absent from Illinois for nearly an entire six-month period before Katharine petitioned for dissolution of marriage and for child custody. Scott also acknowledges that the length of time that Madalyn lived in Michigan was several weeks shy of the six months needed for Michigan to be the home state.

The plain language of section 102(7) of the UCCJEA requires that a child live within a state for at least six consecutive months for that state to become the child's home state. 750 ILCS 36/102(7) (West 2004). Additionally, section 102(7) of the UCCJEA directs us to look at the six

months immediately before a custody proceeding is commenced. 750 ILCS 36/102(7) (West 2004). In this case, the custody proceeding was commenced on June 7, 2005, when Katharine filed her petition for dissolution of marriage and sought custody of Madalyn. Therefore, the relevant time period we are concerned with is the six months immediately prior to June 7, 2005, that is, from December 7, 2004, to June 7, 2005.

The record indicates that Madalyn was born in Illinois on October 22, 2004, and lived with Katharine in Illinois for 1 month and 27 days prior to moving to Michigan on December 19, 2004. Madalyn then lived in Michigan with both parents from December 19, 2004, to May 26, 2005, a total of five months and seven days. Katharine moved back to Illinois, taking Madalyn with her, on May 26, 2005. They remained in Illinois, and 12 days later, on June 7, 2005, Katharine filed her petition for dissolution of marriage in which she sought custody of Madalyn. When Katharine filed her petition, Madalyn had lived a total of approximately two months and nine days in Illinois, and a total of five months and seven days in Michigan. Based on these calculations, we find that Madalyn has not lived in either Illinois or Michigan long enough to establish a home state as it is defined by the UCCJEA. See 750 ILCS 36/102(7) (West 2004). Because Madalyn did not live within either Illinois or Michigan for at least six consecutive months prior to June 7, 2005, neither Illinois nor Michigan became Madalyn's home state.

Although no other Illinois reviewing court has yet construed the six-month requirement in section 102(7) of the UCCJEA, we find support for our construction of that section in decisions from other jurisdictions. See Shepard v. Lopez-Barcenas, 200 Or. App. 692, 116 P.3d 254 (2005) (finding "home state" of Mexico, where child was present in Oregon less than six months at the time the proceeding was commenced); In re Amberley D.,775 A.2d 1158 (Me. 2001). For example, in Amberley D., the reviewing court strictly adhered to the UCCJEA's six-month requirement when it

found that the minor, Amberley D., had no home state. Amberley D., 775 A.2d at 1164. That case was a guardianship proceeding that involved a teenage minor who ran away from an abusive living situation in her mother's New Hampshire home. Amberley D. went to her paternal step-grandparents' home in Maine, and the step-grandparents, residents of Maine, petitioned for and were awarded temporary guardianship of Amberley D. by a Maine trial court. Amberley D.'s mother, then a resident of New Hampshire, argued on appeal that New Hampshire had jurisdiction because New Hampshire was Amberley D.'s home state. Immediately before Amberley D.'s step-grandparents filed for temporary guardianship, Amberley D. had been living in New Hampshire, but due to her mother's transitory living situation, Amberley D. had lived in New Hampshire for less than six months. The reviewing court said that New Hampshire could not be Amberley D.'s home state, because the UCCJEA's six-month requirement to establish a home state had not been met. Amberley D., 775 A.2d at 1164. The reviewing court ultimately determined that, due to Amberley D.'s significant connections to Maine, Maine could exercise jurisdiction in the matter. Amberley D., 775 A.2d at 1164.

As Amberley D. demonstrates, the requirement that a child live within a state for a consecutive six-month period to establish the child's home state pursuant to the UCCJEA should be strictly adhered to. Here, because Madalyn had not lived in either Illinois or Michigan for the necessary consecutive six-month period prior to June 7, 2005, neither state is Madalyn's home state.

Alternatively, Katharine and Scott both seek to apply the "temporary absence" provision found in section 102(7) of the UCCJEA, to include periods of "temporary absence" as part of the six months required for a finding of a home state. Katharine claims, without further elaboration, that the time when she and Madalyn lived in Michigan was a period of "temporary absence" from Illinois. Scott claims that Michigan is Madalyn's home state and argues that the days when Madalyn was in

Illinois were "temporary absences" from Michigan that should be counted toward the six-month period necessary to establish Michigan as the home state.

We note that neither party developed an argument or cited any authority in support of their respective claims. Supreme Court Rule 341(e)(7) requires that parties provide proper citation to authority in their briefs. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001. Rule 341(e)(7) also provides that issues not properly raised are waived. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001. Both parties have failed to provide any facts to establish that Madalyn's stay in one state should be construed as a "temporary absence" from the other state. Neither party has provided any authority wherein a court construed such a living arrangement as a "temporary absence" either. But see, e.g., In re Calderon-Garza, 81 S.W.3d 899 (Tex. App. 2002) (noting that the "temporary absence" provision cannot be construed to include periods before the child was first present in the claimed home state). These arguments are, therefore, waived.

For the same reasons, we also find waived another of Katharine's arguments. Katharine claims that Illinois is Madalyn's home state because, in a previous dissolution of marriage proceeding purportedly filed in Illinois prior to Madalyn's birth but later voluntarily dismissed, no objection was made to jurisdiction. In her affidavit attached to her response to Scott's motion to dismiss for lack of subject matter jurisdiction, Katharine referred to this prior filing of a dissolution of marriage petition. However, we note that the record contains no court order or other type of documentation supporting her argument regarding jurisdiction. Accordingly, this argument is waived. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001.

In the absence of a home state, section 201(a)(1) of the UCCJEA is not applicable. However, section 201(a)(2) of the UCCJEA provides an alternative basis for Illinois to exercise jurisdiction in an interstate child custody matter where no home state exists. As stated earlier, section 201(a)(2) provides that Illinois can exercise jurisdiction if (1) Madalyn and at least one of her parents have significant connections with Illinois, and (2) substantial evidence is available in Illinois concerning Madalyn's care, protection, training, and personal relationships. See 750 ILCS 36/201(a)(2) (West 2004).

The significant connection provision of the UCCJEA was recently construed by the Illinois Supreme Court in D.S., 217 Ill. 2d 306. In D.S., the court found that the minor child, D.S., had no home state for the purpose of determining subject matter jurisdiction in a child custody proceeding under section 201(a) of the UCCJEA. D.S., 217 Ill. 2d at 319. Because D.S. had no home state, the supreme court proceeded to analyze whether the facts would satisfy the significant connection and substantial evidence requirements for a finding of jurisdiction under section 201(a)(2) of the UCCJEA. D.S., 217 Ill. 2d at 319.

In applying section 201(a)(2) of the UCCJEA, the D.S. court considered a number of factors, including whether close family members lived in Illinois, whether the parties were residents of the state, whether the mother received prenatal care in Illinois, and whether medical records or other records evidencing the mother's parental fitness and mental health existed in the state. D.S., 217 Ill. 2d at 319-20. The court found that D.S. and his mother had significant connections with Illinois and that substantial evidence concerning D.S.'s care, protection, training, and personal relationships existed in Illinois. D.S., 217 Ill. 2d at 320. On that basis, the court held that the trial court possessed subject matter jurisdiction under section 201(a)(2) of the UCCJEA. D.S., 217 Ill. 2d at 320.

The analysis adopted by our supreme court in <u>D.S.</u> controls our analysis of section 201(a)(2) in the present case. Here, the record indicates that Katharine and Scott were married in Illinois and that Katharine resides in Illinois. The record also reflects that Katharine returned to Illinois periodically throughout the marriage, each time that the parties separated. Katharine's mother, Diane Roisland, is also a resident of Illinois. Madalyn was born in Illinois, and Madalyn and Katharine lived with Roisland in Lake Zurich from October through December 2004 and upon moving back to Illinois in May 2005. The record further indicates that Katharine relied on Roisland to assist with the care and support of Madalyn and that Katharine received medical aid and food supplements from Illinois. The record also reflects that Katharine attended counseling in Illinois and that she planned on attending parenting classes, obtaining career training, finding employment, and obtaining independent housing for herself and Madalyn in Illinois. Based on the evidence from the record, we find that Madalyn and Katharine have significant connections with Illinois. We also note that substantial evidence of Madalyn's care, protection, training, and personal relationships exists in Illinois.

On our review of the record and the relevant statutory authority, we conclude that Illinois has subject matter jurisdiction to make an initial child custody determination in this case, pursuant to section 201(a)(2) of the UCCJEA. See 750 ILCS 36/201(a)(2) (West 2004). Accordingly, we hold that the trial court erred when it granted Scott's section 2--619 motion to dismiss for lack of subject matter jurisdiction.

Our decision here obviates the need to address the propriety of the trial court's ruling on Katharine's request for temporary emergency jurisdiction. See <u>In re Marriage of Zuberbier</u>, 309 Ill. App. 3d 386, 388 (1999) (reviewing courts should not render advisory opinions or consider issues where the result will not be affected regardless of how the issues are decided).

For the foregoing reasons, we reverse the judgment of the circuit court of Lake County and remand for further proceedings consistent with this opinion.

Reversed and remanded.

O'MALLEY and BYRNE, JJ., concur.